OPINION
{¶ 1} Christopher K. Sherman, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court granted him and Kelly F. Sherman, defendant-appellee, a divorce.
 {¶ 2} The parties were married in April 1996, and have one child, who was born October 10, 1996. Kelly was not employed after giving birth, and Christopher had a full-time job and worked on cars in his spare time. Prior to the parties' marrying, Kelly's parents moved from Ohio to Florida, and gave nearly all of their possessions to Kelly and her brother. In August 1996, the parties bought the house that had belonged to Kelly's parents.
 {¶ 3} Christopher filed for divorce on April 5, 2002. Kelly and the parties' child continued to live in the marital residence, while Christopher paid the first and second mortgages, taxes, and utilities for the marital residence. In July 2002, the court issued temporary orders, effective June 19, 2002, in which the court ordered Christopher to pay both mortgages on the home, the real estate taxes, child support of $583.84 per month, spousal support of $500 per month, $1,500 in attorney fees, the child's extraordinary medical expenses, and the balance on the parties' Lazarus credit card as of June 19, 2002. Kelly was ordered to pay the balances on several other credit cards.
 {¶ 4} On August 15, 2002, Christopher filed a motion for contempt against Kelly for violating the restraining order by using the parties' Lazarus credit card, as well as a Civ.R. 75 motion. On August 27, 2002, Kelly filed a motion for contempt against Christopher for non-payment of child support, spousal support, and debts. On December 3, 2002, Kelly filed a motion for contempt against Christopher for non-payment of attorney fees. On July 22, 2003, Kelly moved for an oral hearing pursuant to Civ.R. 75. On June 11, 2004, Kelly filed a motion for contempt against Christopher for non-payment of the mortgages, taxes, and extraordinary medical expenses. On November 22, 2004, Christopher filed another contempt motion against Kelly for violating the restraining order by accessing one of his financial accounts. During the course of the proceedings, Kelly filed for bankruptcy.
 {¶ 5} A final hearing on the matter took place on various days from December 8 to December 15, 2004. On August 2, 2005, the court entered a judgment entry decree of divorce. Christopher appeals the judgment of the trial court, asserting the following three assignments of error:
1. WHETHER THE TRIAL COURT ERRED IN ITS DISTRIBUTION OF THE PARTIES' ASSETS.
2. WHETHER THE TRIAL COURT ERRED IN ITS DISTRIBUTION OF THE PARTIES' DEBTS.
3. WHETHER THE COURT ABUSED ITS DISCRETION BY FAILING TO RULE ON APPELLANT'S TWO PENDING CONTEMPT MOTIONS.
 {¶ 6} Christopher argues in his first assignment of error that the trial court erred in its distribution of the parties' assets. Christopher first argues that the trial court erred in valuing the martial residence. A trial court has broad discretion in determining an equitable property division in divorce cases.Berish v. Berish (1982), 69 Ohio St.2d 318, 319. It is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce. Id., at 320, citingCherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A trial court must have discretion to do what is equitable upon the facts and circumstances of each case. Berish, at 320. However, if the trial court abuses that discretion, a reviewing court may modify or reverse the property division. Id., at 319. A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 7} In making an equitable division of property, a trial court must first determine the value of marital assets.Hightower v. Hightower, Franklin App. No. 02AP-37, 2002-Ohio-5488, at ¶ 22. An appellate court will uphold a trial court's determination of valuation, which is based upon competent, credible evidence absent a showing of an abuse of discretion. Moro v. Moro (1990), 68 Ohio App.3d 630, 637. R.C.3105.171, which governs property distribution, expresses no specific way for the trial court to determine valuation. Fockev. Focke (1992), 83 Ohio App.3d 552, 554. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. James v. James (1995),101 Ohio App.3d 668, 681. A trial court must have a rational, evidentiary basis for assigning value to marital property. McCoy v. McCoy (1993),91 Ohio App.3d 570, 576-578.
 {¶ 8} For purposes of dividing the parties' assets in the present case, the trial court found the fair market value of the residence to be $209,000, based upon the testimony of Kelly's expert, Dan Glenn. In his broker's market analysis, Glenn valued the property at $209,000 as of July 3, 2003, the date of his inspection. The trial court noted Glenn did not prepare an updated market analysis and offered additional opinions as to the value as of the date of trial based merely upon recent comparisons, which the trial court found unpersuasive. Glenn testified he would have listed the house for $215,000. He also testified that one similar comparison home had recently sold for $228,900, while two other comparison homes had recently sold in the neighborhood for $237,000 and $239,000.
 {¶ 9} Christopher asserts that, given this range of possible values, the evidence did not support the court's finding that the value of the home was $209,000, and the trial court should have ordered the home sold. We disagree. The trial court arrived at a value of the house based upon expert testimony that the fair market value was $209,000. Although the expert's valuation was 18 months old at the time of trial, the court explained why it did not find the other values presented by the expert persuasive. The court indicated the more recent valuations were not based upon an updated market analysis and were based only upon comparison sales. Christopher presented no competing evidence, expert or otherwise, as to the valuation of the home. The trial court had broad discretion in valuing the martial assets, and we find the court's reasoning provided a rational evidentiary basis for assigning the home a value of $209,000. See McCoy, at 576-578. This argument is without merit.
 {¶ 10} Christopher also argues that the trial court erred in valuing his 1991 Chevy truck at $5,000. Christopher claims the court ignored the fact that, although the vehicle was in pristine condition at the time of the separation, after Kelly drove the vehicle during the separation, it needed $1,235 in repairs and an additional $3,172 in restoration to return it to its April 2002 condition. Given the costs of repair and restoration, Christopher asserts the court should have assigned a value of $592 to the vehicle.
 {¶ 11} The trial court found the value of the truck was $5,000 based upon a stipulation signed by both parties prior to trial. A stipulation is a "`[v]oluntary agreement between opposing counsel concerning disposition of some relevant point[.]'" Burdge v. Bd. of Cty. Commrs. (1982),7 Ohio App.3d 356, 358, quoting Black's Law Dictionary (5th Ed. 1979) 1269. Generally, a party may stipulate to facts even if that stipulation assists or undercuts his/her case. Citizens forChoice v. Summit Cty. Council (2001), 143 Ohio App.3d 823, 833. "A stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in the case." Whitehall ex rel. Fennessy v. Bambi Motel, Inc.
(1998), 131 Ohio App.3d 734, 742. In the present case, there is no apparent reason to disregard the stipulation or interpret it in a way other than stated in the stipulation submitted by the parties. By executing the stipulations, Christopher was agreeing that the value of the truck was currently $5,000. If he believed the fair market value of the truck had been reduced by $3,172, due to the need for restoration, which is what Christopher contends herein by requesting that amount be subtracted from $5,000, he should not have agreed to the stipulations. Further, with regard to the cost of repairs to the vehicle, the trial court properly deemed it a marital debt and considered such total in arriving at an overall equitable distribution of assets and liabilities. We find no abuse of discretion by the trial court with regard to the valuation of the truck.
 {¶ 12} Christopher next argues that the trial court erred in its analysis of the amounts each party contributed as separate property to the down payment of the marital residence. The trial court found that Kelly had a separate property interest in the marital residence of $17,474.49. Christopher argues that the parties and Kelly's mother all testified that Kelly's parents gifted the parties $5,000 after the closing of the house; thus, Kelly's separate property should have been reduced to 12,474.49. However, again, Christopher agreed in the stipulations that Kelly had a separate property interest in the marital home of $17,474.49. Notwithstanding, there is no evidence to support Christopher's contention that the $5,000 should reduce Kelly's separate property interest. Kelly's mother testified that she gave the parties $5,000 "so they would have something to get started" after purchasing the home. There was no compelling evidence or testimony that the $5,000 was not for his or her mutual benefit. Having no other evidence on the issue, we fail to see why Kelly's separate property interest in the marital residence should be reduced by $5,000. This argument is without merit.
 {¶ 13} Christopher next argues that the trial court abused its discretion by finding that there were only six items of marital household goods and furnishings to be divided between the parties, i.e., the kitchen table and chairs, two tables with lamps, two sofas, a sectional sofa, a computer, and a washing machine. He contends there was a basement full of property, as well as a stove and microwave oven. He also claims he testified as to "numerous" other items purchased by the parties or gifted to them during the marriage, although he identifies none of them in his appellate brief. In the decree, the court ordered the parties to divide the six named items equally between themselves, and if they were unable to do so, to alternatively select items until the division was complete.
 {¶ 14} The only specific items Christopher references upon appeal are the stove and microwave oven. Christopher cites to one reference to the stove and microwave oven made during the hearing, in which Kelly testified that Christopher bought them for her for Sweetest Day 2001. There is no other significant evidence in the record regarding the stove and microwave oven, except for Kelly's additional testimony that the stove and microwave were a combination unit. Further, the parties presented no testimony as to the current market value of the items. Given that the microwave oven and stove were a combination unit, the court may have considered them a permanent fixture of the house to be included in the marital portion of the value of the residence, which was then divided between the parties pursuant to the decree. Without further evidence regarding this unit, we can find no abuse of discretion on behalf of the trial court in its treatment of such.
 {¶ 15} As for the other property Christopher claims should have been considered, Christopher fails to specify what property he believes was subject to division. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. State ex rel. Montgomery v. Gold,
Franklin App. No. 04AP-863, 2006-Ohio-943, at ¶ 94, citingSlyder v. Slyder (Dec. 29, 1993), Summit App. No. 16224, andSykes Constr. Co., Inc. v. Martell (Jan. 8, 1992), Summit App. No. 15034. The burden of affirmatively demonstrating error on appeal rests with the party asserting error. App.R. 9 and 16(A)(7); State ex rel. Fulton v. Halliday (1944),142 Ohio St. 548. Here, Christopher's argument is vague and lacking in any supportive legal argument regarding the items he believes should have been deemed marital property and subject to division by the court. However, we note that Kelly testified there was a basement full of property, such as computers, monitors, paper, pens, a compressor, tires, and automotive parts, but that Christopher had stolen the property from his employer. She contacted Christopher's employer, as well as the police, to report the "enormous" amount of stolen goods, but she remained in possession of them. These goods are not marital property subject to division upon divorce. As Christopher has failed to make any specific argument with regard to any particular household items, we find this argument without merit. For these reasons, Christopher's first assignment of error is overruled.
 {¶ 16} Christopher argues in his second assignment of error that the trial court erred in its distribution of the parties' debts. Christopher first contends that the trial court erred in ordering him to pay the partial balance of the Lazarus credit card of $4,346.50, plus one-half of the accrued late fees, penalties, and interest. This total was the balance of the credit card on the effective date of the temporary orders of June 19, 2002. Christopher maintains this balance was incurred in violation of the ex parte restraining order served on Kelly on April 17, 2002, which prohibited her from using the credit card.
 {¶ 17} As noted above, in reviewing a property division, we may not reverse the judgment of the trial court absent a finding of an abuse of discretion. Here, the trial court found the Lazarus credit card had a present balance of $12,600. The court also found the parties stipulated that, as of June 19, 2002, the effective date of the temporary orders, the credit card had a balance of $4,346.50, and, as of August 16, 2002, the balance was $10,308.07. The court found that the temporary orders ordered Christopher to pay the $4,364.50 balance due on the credit card as of June 19, 2002. The court further noted that, throughout the marriage and until May 2002, the entire balance of this account was paid in full on a monthly basis, and Christopher had failed to make any payment toward the balance on this credit card since the temporary orders. The trial court then ordered Christopher to pay and hold Kelly harmless on the Lazarus credit card balance of $4,346.50, plus one-half of any and all accrued late fees, penalties, and interest.
 {¶ 18} Christopher contends the June 19, 2002 balance of $4,364.50 was incurred in clear violation of the ex parte restraining order served upon Kelly on April 17, 2002. He asserts Kelly's use of the Lazarus credit card in violation of the restraining order was the basis for his contempt motion filed in August 2002. By making him pay the $4,364.50 Kelly charged on the Lazarus credit card, Christopher maintains, the trial court rewarded Kelly's violation of the order. However, whether Kelly's use of the Lazarus credit card violated the restraining order is not the relevant issue for purposes of determining how that debt should be apportioned in the final decree. The issue is whether that debt may be properly deemed a marital debt subject to division. Kelly testified that the parties agreed after their child was born she would be a stay-at-home mother; therefore, she had no independent source of income from April 2002 to June 2002, the period immediately after Christopher filed for divorce. Kelly also testified that Christopher told her in April 2002 that she should use the credit card because he was not going to pay any more of her bills. She said she used the credit card to pay for groceries, utilities, clothing, car repairs, and air conditioning repairs. Further, on September 4, 2004, the trial court deemed the requests for admission filed by Kelly be admitted as true due to Christopher's failure to respond to the requests, and the fourth admission was that he told Kelly to use the Lazarus credit card to pay her living expenses. Given these circumstances, and no compelling evidence to the contrary, we cannot say the trial court abused its discretion by ordering Christopher to pay the balance on the credit card as of June 19, 2002.
 {¶ 19} Christopher next argues that the trial court erred when it characterized as spousal support its order that he pay all arrearages on the first and second mortgages, so as to render it non-dischargeable in bankruptcy. Christopher maintains that, although the trial court was seeking to extend the spousal support indirectly via this particular order, it failed to justify this extension through the analysis required by R.C.3105.18(C)(1)(c). In the decree, the trial court noted that Christopher had been ordered to pay the first mortgage, second mortgage, real estate taxes, and insurance on the marital home but had fallen behind on those payments on the mortgages and taxes. The court then ordered Christopher to pay those delinquent payments due on the mortgages, real estate taxes, and insurance accrued through the date of the decree, and that those payments be in the nature of spousal support and not dischargeable in bankruptcy.
 {¶ 20} A trial court has broad discretion when determining the amount and nature of spousal support. Bolinger v. Bolinger
(1990), 49 Ohio St.3d 120, 122; Rizzen v. Spaman (1995),106 Ohio App.3d 95, 105. R.C. 3105.18(C) provides 13 factors (a) through (m) and a catch-all factor (n) that a trial court must consider in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, duration, and terms of payment. In this argument, Christopher apparently objects only specifically to the trial court's failure to address the factors under R.C. 3105.18(C)(1)(c), which include the ages and the physical, mental, and emotional conditions of the parties. However, in discussing spousal support generally, the trial court did specifically indicate the ages of the parties and that the parties did not have significant medical problems. Thus, the trial court did, in fact, address the factors under R.C.3105.18(C)(1)(c), as well as the other relevant factors under R.C. 3105.18(C)(1).
 {¶ 21} With regard to Christopher's general argument that the amount ordered exceeds that which is reasonable because of the 30 months of temporary spousal support and 24 months of mortgages he paid, we disagree with Christopher's characterization of the order. First, we note the trial court's order regarding the mortgages was merely enforcing the prior temporary orders, with which Christopher had failed to comply. Further, this court has before held that mortgage payments may be ordered to be in the form of spousal support and, thus, not dischargeable. See Pearlv. Pearl (1990), 69 Ohio App.3d 173, 177. In Pearl, we reasoned that it was rational for the trial court to find the payment of the mortgage on the marital residence was in the nature of spousal support because the purpose of the payments was to provide a rent-free home for the wife and minor child. Id., at 179. We found that providing a home for a child and former spouse constitutes support, and it was this duty to support (not the debt to the mortgagee) that the trial court was enforcing by its order. Id. We also noted that the husband's payment of child support and the mortgage were his only means of support to the wife, and the assumption of a joint debt by one party necessarily frees up money for the other party for other purposes, including daily support. Id., at 179-180.
 {¶ 22} Similarly, in the case at bar, the purpose of the temporary order was to provide Kelly and the minor child a place to live, considering that Kelly had been unemployed since 1996 because of the parties' joint decision that she would stay at home to raise their child. Although Kelly was also receiving temporary spousal support during this period, pursuant to the decree, she no longer receives spousal support. Thus, the payment of the past due mortgage arrearages is necessary to free up money so she may pay her current daily living expenses without being encumbered by the mortgage arrearages that were accumulated while she was retraining and attempting to re-enter the workforce after being unemployed for eight years. For these reasons, we find the trial court did not abuse its discretion by ordering Christopher's payment of the mortgage arrearages, taxes, and insurance, be in the nature of spousal support. Therefore, Christopher's second assignment of error is overruled.
 {¶ 23} Christopher argues in his third assignment of error that the trial court abused its discretion by failing to rule on his two pending contempt motions, one of which related to his claim that Kelly violated the temporary restraining order by incurring debt on the Lazarus credit card, and one of which related to his claim that Kelly violated the temporary restraining order by incurring debt on their joint credit cards, taking money from their joint accounts, and harassing him by phone. However, the trial court specifically acknowledged the two pending contempt motions in the final decree and later stated that any motions not specifically addressed therein were denied. Further, the trial court ordered Christopher to pay a portion of the amounts Kelly incurred during the period of the restraining order, which we have found was not in error. Additionally, the purpose of a civil contempt motion is not to punish disobedience.Tomasik v. Tomasik (Jan. 29, 1997), Summit App. No. 17822. The purpose is to compel compliance with a court's order. Natl.Equity Title Agency, Inc. v. Rivera (2001), 147 Ohio App.3d 246,252. Since compliance with the temporary orders is moot, the contempt proceeding is also moot. State ex rel. Corn v. Russo
(2001), 90 Ohio St.3d 551, 555. Christopher's third assignment of error is overruled.
 {¶ 24} Accordingly, Christopher's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
Sadler and Travis, JJ., concur.