[Cite as *State v. L.E.F.*, 2014-Ohio-4585.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-1042 |
| | | (C.P.C. No. 12CR-09-4956) |
| v. | : | |
| L.E.F., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 16, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*W. Joseph Edwards*, for appellant.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} L.E.F., defendant-appellant, appeals from the judgment of the Franklin County Court of Common Pleas in which the court found him guilty, pursuant to a jury trial, of 4 counts of rape, with specifications, which are violations of R.C. 2907.02 and first-degree felonies, and guilty of 13 counts of gross sexual imposition ("GSI"), which are violations of R.C. 2907.05 and third-degree felonies.

{¶ 2} Appellant was married to a woman who had a daughter, J.H. Between January 2006 and October 2011, appellant engaged in sexual activity with J.H. After J.H. told a friend and then a school counselor about appellant's conduct, appellant was charged with 33 total counts of rape and GSI.

{¶ 3}   On October 8, 2013, a jury trial commenced, and during the course of the trial, plaintiff-appellee, State of Ohio, dismissed several counts of rape and GSI. The jury eventually returned a verdict of guilty as to 4 counts of rape and 13 counts of GSI, and not guilty as to 1 count of rape and 2 counts of GSI.  On December 2, 2013, the trial court issued a judgment entry in which it found appellant guilty, pursuant to the jury's verdict, found him to be a sexual predator, and sentenced him to life in prison without parole. Appellant appeals the judgment, asserting the following assignments of error:

> I.  THE TRIAL COURT ERRED WHEN IT WHEN IT [sic] ADMITTED OVER OBJECTION THE VIDEO-TAPED STATEMENT OF J.H. THAT WAS TAKEN BY SOCIAL WORKER WESTGATE IN VIOLATION OF OHIO EVID.R. 803(4) THEREBY DENYING APPELLANT OF HIS RIGHT TO A FAIR TRIAL UNDER THE OHIO AND FEDERAL CONSTITUTIONS.
>
> II. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> III.  THE TRIAL COURT DEPRIVED APPELLANT OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ALLOWED NURSE HORNER TO TESTIFY AS TO THE VERACITY OF THE CHILD WITNESS IN THIS MATTER.

{¶ 4}   Appellant argues in his first assignment of error that the trial court erred when it admitted into evidence the videotaped statement of J.H. that was filmed during the interview with Jennifer Westgate, a social worker and medical forensic interviewer at the Center for Family Safety and Healing ("child advocacy center") at Nationwide Children's Hospital. "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). Likewise, the admission of videotape evidence is a matter of discretion for the trial court. *Reinoehl v. Trinity Universal Ins. Co.*, 130 Ohio App.3d 186, 195 (10th Dist.1998). An appellate court's review of the admission of evidence is limited to

a determination as to whether the trial court abused its discretion. *Id.* An abuse of discretion connotes more than a mere error in judgment, it implies that the trial court's decision was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 5} In the present case, appellant contends that the statements J.H. made to Westgate in the videotaped interview were not made for the purposes of medical diagnosis or treatment and, therefore, were hearsay that did not fall within the hearsay exception under Evid.R. 803(4). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence.

{¶ 6} Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Thus, "[w]hen examining the admissibility of hearsay statements under Evid.R. 803(4), the primary inquiry is whether the statements were made for the purposes of medical diagnosis or treatment, as opposed to some other purpose." *Fields v. CSX Transp., Inc.*, 197 Ohio App.3d 561, 2011-Ohio-6761, ¶ 17 (8th Dist.). As stated by the Supreme Court of Ohio, "[t]he test under Evid.R. 803(4) goes solely to whether a statement was made for purposes of medical diagnosis or treatment. If a statement *is* made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)." (Emphasis sic.) *State v. Dever*, 64 Ohio St.3d 401, 414 (1992).

{¶ 7} Here, appellant claims that the statements made by J.H. in the videotape were not for purposes of medical diagnosis but for the criminal investigation of the sexual assaults. Appellant points out that the interview was scheduled by the Reynoldsburg Police Department, no medical purpose existed for the interview, and the videotape was made solely for use at trial.

{¶ 8} Westgate testified that when a child comes into the center, the center asks the child's medical background and gets the child's weight, height, and temperature. Westgate said that at every interview of a child, either a physician or nurse practitioner

observes the interview, and she always meets with the physician or nurse immediately following the interview to discuss the matter. Westgate also testified that the interview guides the course of the medical exam, which immediately follows the interview. After the medical exam, the physician then meets with the child's caregiver. The written summary of the interview becomes part of the child's permanent medical record. Westgate also agreed with appellant's counsel on cross-examination that her primary purpose in conducting interviews is to obtain information for the purposes of medical diagnosis or treatment.

{¶ 9}   In *State v.* [*M.A.*], 126 Ohio St.3d 290, 2010-Ohio-2742 ("*M.A.*"), the Supreme Court of Ohio held Evid.R. 803(4) was limited to information necessary for the diagnosis and treatment of injuries. The victim in *M.A.*, who was the defendant's four-year-old daughter, was interviewed by a medical forensic interviewer at the same child advocacy center as in the present case. At trial, the child did not testify, but the court admitted the child's recorded interview from the center. We upheld the admission of the child's interview in *State v.* [*M.A.*], 10th Dist. No. 07AP-789, 2008-Ohio-3471.  On appeal, the Supreme Court addressed whether, in a criminal prosecution, out-of-court statements made by a child to an interviewer employed by a child advocacy center violates the right to confront witnesses provided by the Sixth Amendment's Confrontation Clause and the Ohio Constitution. The court found that the objective of a child advocacy center was neither exclusively medical diagnosis and treatment nor solely forensic investigation. *See M.A.* at ¶ 29. The court held that statements made to interviewers at child advocacy centers that are made for the purposes of medical diagnosis and treatment are non-testimonial and, therefore, admissible without offending the Confrontation Clause.  *Id.* at ¶ 2. The court further held that statements made to interviewers at child advocacy centers that serve primarily a forensic or investigative purpose are testimonial and, therefore, inadmissible pursuant to the Confrontation Clause. *Id.*

{¶ 10} The court in *M.A.* then analyzed specific statements to determine whether they primarily served a forensic or investigative purpose or whether the statements provided information necessary to diagnose and provide medical treatment. The court determined that statements relating to the identity of the perpetrator, the type of abuse alleged, the identification of the body parts of the victim and the perpetrator involved, and

the time frame of the abuse were statements for medical diagnosis and treatment because that information allowed the doctor or nurse to determine whether to test the child for sexually transmitted diseases and to identify any trauma or injury sustained during the alleged abuse. *Id.* at ¶ 32, 38. The court then determined that the child's statement that the offender shut and locked the door before the rape, the child's description of where others were in the house at the time of the rape, the child's statement that the offender removed her underwear, and the child's description of the offender's boxer shorts were statements related primarily to the investigation, and, therefore, such statements were prohibited by the Confrontation Clause. Accordingly, the court affirmed in part and reversed in part the judgment of this court and remanded the matter for a determination of whether the erroneous admission of forensic statements was harmless error. On remand, this court concluded the admission of the challenged evidence was harmless because the statements were cumulative of other evidence properly admitted, and overwhelming evidence other than the challenged statements supported the guilty verdicts. *State v.* [*M.A.*], 10th Dist. No. 07AP-789, 2010-Ohio-5622 ("*M.A. II*"), appeal denied, 128 Ohio St.3d 1426, 2011-Ohio-1049.

{¶ 11} In the present case, because J.H. testified at trial and was subject to cross-examination, we are not presented with a Confrontation Clause issue. Thus, *M.A.* has limited application. *See State v. Simms*, 10th Dist. No. 10AP-1063, 2012-Ohio-2321, ¶ 42, citing *State v. Rucker*, 1st Dist. No. C-110082, 2012-Ohio-185, ¶ 37 (*M.A.* has limited application when victim testified at trial and was subject to cross-examination). *See also In re C.S.*, 10th Dist. No. 11AP-667, 2012-Ohio-2988, ¶ 19, citing *Simms* (same). However, pursuant to *M.A.*, we must still examine J.H.'s statements made during the recorded interview at the child advocacy center and determine whether they were inadmissible because they were for forensic purposes or admissible because they were for purposes of medical diagnosis and treatment.

{¶ 12} In his brief, appellant does not cite any specific statements made by J.H. in her interview. Nevertheless, our review of the interview reveals that the majority of the statements that J.H. made were for purposes of medical diagnosis and treatment and, therefore, admissible. J.H. stated how many times the abuse occurred, how old she was when the abuse occurred, and how and where appellant ejaculated. She also stated that

appellant watched her in the shower, forced her to suck his "ding-a-ling" and "wiener," did embarrassing things to her that made her feel weird, put his hands down her pants and rubbed her private parts, forced her to rub his "ding-a-ling," rubbed her both inside and outside her skin, rubbed her buttocks, squeezed her breasts to check how large they were getting, and checked J.H.'s private parts to see if she was growing hair, but he never put his private parts inside of her. (Tr. Vol. III, 251.)   These statements were for the purposes of medical diagnosis and treatment and, thus, admissible. *See M.A.* at ¶ 32, 38 (the court classified information regarding the identity of the perpetrator, the type of abuse alleged, the identification of the areas where the child had been touched and the body parts of the perpetrator that had touched her, and the time frame of the abuse, as statements for diagnosis and treatment because that information allowed the doctor or nurse to determine whether to test the child for sexually transmitted diseases, and to identify any trauma or injury sustained during the alleged abuse); *Simms* at ¶ 40, citing *In re J.M.*, 4th Dist. No. 08CA782, 2011-Ohio-3377, ¶ 39 (child's statement that the offender "rubbed his pee-pee all over my face and then put his pee-pee in my butt," as well as her statements that "her butt hurt" and that the incident had occurred that day were statements made for medical diagnosis and treatment and, therefore, were non-testimonial and admissible); *State v. Dorsey*, 5th Dist. No. 11 CA 39, 2012-Ohio-611, ¶ 24-28 (victim's statements describing forms of sexual activity, such as statements explaining that the offender grabbed her, hugged her, grabbed her breast and vagina, got on top of her, and put his penis in her vagina, would cause a medical professional to be concerned about possible injuries and sexually transmitted diseases; such statements were not testimonial and were for medical diagnosis and treatment); and *In re T.L.*, 9th Dist. No. 09CA0018-M, 2011-Ohio-4709, ¶ 14-22 (statements that the perpetrator touched the child's vagina with his fingers under her underwear and also inside her vagina were for purposes of medical diagnosis and treatment and, therefore, admissible).

{¶ 13} Our review of the interview also reveals several statements that J.H. made that were mainly for forensic purposes and, therefore, inadmissible. J.H. stated that appellant was mean to her and yelled at her, they watched "romance shows" together prior to the abuse, she and appellant were sitting on the couch when the abuse occurred, and her mother watched appellant check J.H.'s breasts and private parts to see how she

was developing. (Tr. Vol. IV, 450-51.) J.H. also described whom she told about the abuse, the houses and rooms in which the abuse occurred, and the locations of others who were in the house when the abuse occurred. Courts have found similar statements were for forensic purposes. *See M.A.* at ¶ 34-37 (the child's assertion that the offender shut and locked the door before raping her, the child's description of where others were in the house at the time of the rape, the child's statement that the offender removed her underwear, and the child's description of the offender's boxer shorts were statements related primarily to the investigation and, therefore, such statements were prohibited); *Simms* at ¶ 40 (victim's statement to advocacy center about the location where the events occurred was for purposes of criminal investigation); *C.S.* at ¶ 21 (what appellant was doing on the computer, what appellant was wearing, whether the grandmother was in the room, and the direction the girls were lying in the bed were not potentially pertinent to medical diagnosis or treatment); *State v. Just*, 9th Dist. No. 12CA0002, 2012-Ohio-4094, ¶ 23 (interview statements that defendant took child abuse victim into a separate room or locked her inside his bedroom when he touched her, as well as how defendant became mean toward victim, were not necessary for medical diagnosis and treatment); *J.M.* at ¶ 40 (statements describing that the defendant talked mean to child victim, that the incident happened in defendant's room, that the defendant showed victim materials with "nasty" stuff of boys and girls, and who was present at the time of the incident, all served a forensic or investigative purpose).

{¶ 14} However, we find that any error that may have occurred by the admission of these statements was harmless, as such statements were cumulative of other, properly admitted testimony. *See M.A. II* (child abuse victim's improperly admitted statements to child advocacy center were cumulative of other properly admitted testimony; thus, any error in their admission was harmless). J.H. testified at trial about the incidents of abuse, including that the abuse occurred in the living room on the couch, her mother was in bed and her brothers were playing video games when the abuse happened, she first told her friends and school counselor about the abuse, she was lying on the couch when the abuse occurred, her mom was present when appellant squeezed her breasts to check their size to see if she needed a training bra, and the abuse occurred while they were watching "love" or "romance" shows on television. (Tr. Vol. IV, 450-51.) Accordingly, insofar as J.H.'s

statements may have been for forensic rather than medical purposes and improperly admitted, we conclude such admission constitutes harmless error because the statements were cumulative of J.H.'s live trial testimony, which was subject to cross-examination. Accordingly, appellant's first assignment of error is overruled.

{¶ 15} Appellant argues in his second assignment of error that the trial court's judgment was based on insufficient evidence and against the manifest weight of the evidence. In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether any rational fact finder, viewing the evidence in a light most favorable to the state, could have found all of the essential elements of the crime proven beyond a reasonable doubt. *State v. Jones*, 90 Ohio St.3d 403, 417 (2000), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). On review for sufficiency, courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.* at 390. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. Consequently, a verdict will not be disturbed based on insufficient evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001); *Jenks* at 273.

{¶ 16} This court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Thompkins* at 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. *Id.* On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact

to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193-94 (1998).

{¶ 17} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *See Martin* at 175. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, a reviewing court must defer to the factual findings of the jury, or judge in a bench trial, regarding the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Concerning the issue of assessing witness credibility, the general rule of law is that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). Indeed, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it. *Hill v. Briggs*, 111 Ohio App.3d 405, 412 (10th Dist.1996). If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment. *White v. Euclid Square Mall*, 107 Ohio App.3d 536, 539 (8th Dist.1995). Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶ 18} Here, the whole of appellant's argument is that "J.H.'s testimony was lacking in credibility and specificity as to dates, locations, and acts to have a jury convict him of the offenses." (Appellant's Brief, 13-14.)  Appellant does not support his assertion with any further argument or citation to the record.

{¶ 19} App.R. 16(A)(7) requires an appellant's brief to include the "contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Further, App.R. 12(A)(2) provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based."  It is not this

court's duty to search the record for evidence to support an appellant's argument as to alleged error. *Sherman v. Sherman*, 10th Dist. No. 05AP-757, 2006-Ohio-2309, ¶ 15; *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.). Based on this authority set forth in the appellate rules, we decline to address appellant's undeveloped argument under this assignment of error.

{¶ 20} We also note that appellant's argument only actually contends that the conviction was based on insufficient evidence. However, under a sufficiency of the evidence review, we do not engage in a determination of witness credibility; rather, we assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime. *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 21} Therefore, based on the above authorities and the absence of specific arguments and citations to the record, we find the jury's verdict was not based on insufficient evidence or against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.

{¶ 22} Appellant argues in his third assignment of error that the trial court erred when it allowed Gail Horner, the pediatric nurse practitioner at the child advocacy center who performed the physical examination on J.H., to testify as to the veracity of the victim, J.H. In her trial testimony, when asked on direct examination on what she based her diagnosis of child sexual abuse, Horner testified:

> It was based on the history of sexual abuse given by [J.H.] during her forensic interview coupled with the anogenital examination findings. Even though the anogenital exam was a normal or a nonspecific exam, she gave a good consistent spontaneous history of sexual abuse in the forensic history.

(Tr. Vol. IV, 595-96.)

{¶ 23} Later, on cross-examination, defense counsel asked Horner the following:

> Q. All right. Your diagnosis and opinion in this case is sexual abuse. Now, that is – that opinion a based solely on the

history that you obtained or at least read about from [J.H.] and talked to Ms. Westgate about?

A. Yes. It's based on the disclosure of sexual abuse that [J.H.] gave during her forensic interview.

Q. And that opinion then assumes the accuracy of that history? In other words that she is telling the truth?

A. Yes.

(Tr. Vol. IV, 623-24.)

{¶ 24} Trial counsel objected to Horner's direct-examination testimony on the same basis asserted here. The trial court overruled the objection, finding:

Strictly speaking, that is not an affirmation of her credibility here as a witness. I realize that's getting fairly close, but in all conscience, if she doesn't go any farther than that, I cannot sustain the objection because, after all, I think it would be fair game.

If, for example, a child was all over the road in terms of describing this, that, and the other, and it was totally inconsistent with everything else, you wouldn't, obviously, be able to cross-examine her on that.

So I do caution you that I do not want her affirming the credibility of this witness, but to say that the history is good, consistent, and spontaneous is fair game.

(Tr. Vol. IV, 598-99.)

{¶ 25} The court in *In re W.P.*, 8th Dist. No. 84114, 2004-Ohio-6627, addressed a similar argument and distinguished *State v. Boston*, 46 Ohio St.3d 108 (1989), which appellant in the present case also cites in support of his argument. In *W.P.*, the pediatric nurse practitioner who conducted a physical examination of a child sexual-assault victim testified that, although her physical exam of the victim revealed a normal external anal/genital exam, based on the language the victim used to describe the incidents, the victim's consistency of the details in telling the social worker and the expert witness, and the victim's ability to describe the incidents in a narrative form, she did not find anything

that caused her to question the truthfulness of what the victim told her. The trial court permitted the testimony. The child victim also testified at trial.

{¶ 26} On appeal, the defendant argued that the trial court erred in allowing the nurse to testify as to the truthfulness of the victim. The court rejected the defendant's reliance on *Boston*, in which the Supreme Court found it was error to allow an expert witness to testify as to the veracity of a child sexual abuse victim's statements when the expert gave her opinion that the child victim had not fantasized her abuse and was telling the truth. *Id.* at 129. The appellate court found *Boston* was distinguishable because, unlike in *Boston*, the victim in *W.P.* testified at trial, and the expert witness did not testify that the victim was telling the truth. Instead, the expert witness testified that, based on her observations of the language used by the victim in recounting what allegedly occurred and the consistency of the details the victim was able to recall, she did not find anything that caused her to question the truthfulness of what the victim told her. The court also held that, with the victim's testimony, the juvenile court was able to ascertain the credibility of the victim; whereas, in *Boston*, there was no independent indicia of reliability save for the expert witness who vouched for the child victim.

{¶ 27} In the present case, Horner stated that her opinion was based on J.H.'s "good consistent spontaneous history of sexual abuse in the forensic history." (Tr. Vol. IV, 596.) This statement by Horner on direct examination was not the rendering of an expert opinion concerning the veracity of the victim but an explanation of the basis for her diagnosis of sexual abuse. Witnesses involved in the examination of a sexual abuse victim may comment on the consistency of the victim's statements. *See In re D.D.*, 8th Dist. No. 89042, 2008-Ohio-222 (nurse may testify regarding the consistency of the details remembered by the victim); *State v. Demiduk*, 7th Dist. No. 96-CO-16 (June 24, 1998) (physician's observation that the alleged victim was consistent was simply a factor physician considered in making her analysis and was not improper testimony to the alleged victim's veracity). Therefore, we find no error in admitting this testimony.

{¶ 28} Likewise, Horner's testimony on cross-examination was not an expert opinion of the victim's veracity. Horner's statement was only that her opinion was based on the assumption that J.H.'s history was accurate. Again, Horner's cross-examination testimony was explaining the basis for her diagnosis, which is permissible. *See State v.*

*Harvey*, 5th Dist. No. 13-CA-109, 2014-Ohio-2683, ¶ 17 (testimony of pediatric nurse practitioner that her diagnosis of sexual abuse was made based on the child's history did not express any opinion that child was telling the truth but related to her medical diagnosis as a result of the examination); *State v. Cappadonia*, 12th Dist. No. CA2008-11-138, 2010-Ohio-494, ¶ 17, citing *State v. France*, 9th Dist. No. 15198 (Mar. 4, 1992), citing *Boston* at 128 (*Boston* does not prohibit an expert from giving an opinion as to whether a child has been sexually abused where that opinion is based on the expert's medical examination of the victim, even if there was no physical evidence of abuse, and the victim's history). In both of the statements, Horner was testifying as to what led to her ultimate disposition of sexual abuse, which is proper. *State v. Smelcer*, 89 Ohio App.3d 115 (8th Dist.1993) (expert witnesses are permitted to testify to their disposition in a sexual abuse case).

{¶ 29} In addition, insofar as appellant suggests that Horner's testimony could only be interpreted by the jury as vouching for the veracity of J.H., "[o]nly statements directly supporting the veracity of a child witness are prohibited under *Boston*." *State v. Cashin*, 10th Dist. No. 09AP-367, 2009-Ohio-6419, ¶ 20, citing *State v. Rosas*, 2d Dist. No. 22424, 2009-Ohio-1404, fn. 1. "[I]ndirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*." *Id. See also Rosas* at fn. 1, citing *Boston* at 132, fn. 21 (Patton, J., dissenting) (finding that while experts may testify that it is their opinion that a child has been abused, and such opinions implicitly assert a belief in the child's story, such an opinion is only an indirect comment on truthfulness and is, therefore, admissible). Furthermore, J.H. testified at trial and the jury was able to independently ascertain the credibility of the victim. For all the foregoing reasons, we find the trial court did not err when it allowed Horner's testimony, and appellant's third assignment of error is overruled.

{¶ 30} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

_____