[Cite as *State v. Hillman*, 2014-Ohio-5760.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

        Plaintiff-Appellee, : No. 14AP-252
(C.P.C. No. 13CR-11-6206) and

v. : No. 14AP-253
(C.P.C. No. 13CR-12-6648)

Robert L. Hillman, :

        Defendant-Appellant. : **(REGULAR CALENDAR)**

---

D E C I S I O N

Rendered on December 30, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

*Robert L. Hillman*, pro se.

---

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Robert L. Hillman, pro se, appeals the February 25, 2014 judgment of the Franklin County Court of Common Pleas convicting him of burglary, attempted burglary, theft, and receiving stolen property, following a jury trial. For the reasons that follow, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} Appellant's alleged crimes arose out of separate incidents on two different dates. On October 21, 2013, Eric Dunn, a maintenance director for a property rental company, was working at an apartment building located at 451 East Town Street in downtown Columbus, Ohio. While working that morning, Dunn noticed a bicycle leaning against the building directly beneath an open window leading into one of the apartments. Having previously heard a suspicious noise coming from the apartment near the open

window, Dunn called the police, believing that someone had broken into the property. Columbus Police Officers Shawn Pagniano and David Larrison responded to the call. Officer Pagniano monitored the open window while Dunn opened the secured entrance to the building for Officer Larrison. During this time, no one entered or exited the building through the window.

{¶ 3}   Upon entering the building, Dunn and Officer Larrison discovered a man, whom both identified at trial as appellant, alone in a common hallway outside the apartments. Officer Larrison noticed that appellant was carrying a colorfully decorated laptop computer and detained appellant. In addition to the laptop, appellant was also found to be in possession of cables, cell phones, a pair of gloves, and a knife. After detaining appellant, Officer Larrison walked down the hallway and discovered a backpack, which was full of movie and video game discs, next to an apartment door. Officer Larrison checked the door of the apartment located next to where he found the backpack and discovered that the door was unlocked. After announcing his presence and receiving no reply, Officer Larrison entered the apartment, noticed that the window was open, and ascertained that the open window was the same one that Dunn noticed was open and was being monitored by Officer Pagniano. Officer Larrison found no one in the apartment or in the common hallway inside the building.

{¶ 4}   The tenant of the apartment was identified as Molly Schneider. Schneider testified at trial that, when she departed for work on the morning of October 21, 2013, she had locked the door to her apartment and left her kitchen window slightly open. Schneider stated that the items found in appellant's possession had been in her apartment when she left and that, among the items recovered from appellant, were a laptop worth between $1,200 to $1,400, an iPod worth $100, and an iPhone worth $400. Schneider stated that she did not know appellant and that he did not have permission to enter her home or to take her property.

{¶ 5}   On November 13, 2013 at approximately 2 a.m., Hillary Tintera was at her next door neighbor's residence at 1975 Indianola Avenue in Columbus, Ohio, near The Ohio State University ("OSU") campus, when she noticed a man standing at the front door of the residence. At trial, Tintera testified that she saw through the glass door that the man had his hand on the door and was looking inside while attempting to gain access to

the residence. When the man noticed her, he walked away from the door. Realizing that she left her home next door unlocked, Tintera exited her neighbor's residence through the back door and ran to her home's back door. Once inside, she locked the back door and ran to the front door. As she locked the front door, she saw the same man with his hand on the door knob attempting to open the door. Tintera called the police and provided a description of the man and his path of travel. At trial, Tintera testified that she was not sure if appellant was the man she saw attempting to open the door to her home, but stated that he fit the description of the man she saw that night. Tintera testified that appellant would not have had permission to enter her house or take her property.

{¶ 6} On the same date at approximately 2:15 a.m., Columbus Police Officer Jeffrey Hall was working in the OSU campus area as a plainclothes patrol officer when he received a report of a prowler in the area. The report described the man as a black male wearing a black hoodie with beige or tan pants and carrying a backpack and green bag. While Officer Hall was driving an unmarked car in the area, he saw a man matching the prowler's description, whom Officer Hall identified at trial as appellant. After observing appellant jaywalk directly in front of his car, the plainclothes officer parked his vehicle and followed appellant. The plainclothes officer observed appellant as he walked through yards between houses and peered into the window of a house. After appellant was detained by other officers, Officer Hall returned to the house where he had observed appellant looking into a window. Outside that house, Officer Hall discovered the green bag that he had earlier observed appellant carrying. Officer Hall testified that the bag was full of frozen food.

{¶ 7} On November 13, 2013, Officer Rees was also assigned to the area surrounding the OSU campus when he heard that Officer Hall saw a person matching the description of the suspect. Officer Rees arrived at the area where Officer Hall reported seeing the suspect and began searching for Officer Hall. As he was looking for the suspect and Officer Hall, Officer Rees observed a man matching the prowler's description emerge from between two houses. Officer Rees testified that he approached the man, whom Officer Rees identified at trial as appellant, at which point the man became startled and, according to the officer, stated something similar to "I haven't done anything." (Tr. 197.) Officer Rees stopped appellant, who was wearing a backpack at the time of the stop, and

questioned appellant about his activity and purpose. Officer Rees testified that appellant's backpack contained a laptop, an Xbox, video games, controllers, and power cords. Officer Rees noticed that the words "Bryan Takayama 2010" were written on the outside of the Xbox, and, based upon this information, was able to ascertain the identity of the owner of the Xbox, who confirmed to Officer Rees that his Xbox was missing. (Tr. 200.) Further investigation revealed that Kristin Kotalo owned the laptop discovered in the backpack in appellant's possession.

{¶ 8} Bryan Takayama testified at trial that, on November 13, 2013 at approximately 4:30 a.m., he was in bed at his home on Iuka Avenue near OSU when he received a call from a police officer who inquired as to the whereabouts of his Xbox. Takayama went downstairs to check on his possessions and discovered that his Xbox, two controllers, five video games, and power cords were missing. Takayama testified that he could not recall whether or not his doors were locked that evening when he went to bed, but he found that his back door was unlocked when he went downstairs to check his property. Takayama also discovered that a significant quantity of frozen food was missing from his freezer. Takayama stated that appellant did not have permission to be inside his home or to take his property.

{¶ 9} Kristin Kotalo testified at trial that she lived on East 18th Avenue near the OSU campus. On November 13, 2013 at approximately 3 a.m., Kotalo was contacted by police, who inquired if she was missing her laptop. Kotalo discovered that her laptop, which had been in her home on her living room table when she went to bed, was missing. When the police arrived at her residence, Kotalo identified her laptop, which was marked with a distinctive sticker, among the possessions shown by police. Kotalo could not recall whether or not her doors were locked that evening before she went to bed, but she stated that the officers who checked her house found no signs of forced entry. Kotalo testified that appellant did not have permission to be in her home or to take her property.

{¶ 10} On November 21, 2013, a Franklin County Grand Jury indicted appellant on one count of attempted burglary in violation of R.C. 2923.02 and 2911.12, a felony of the third degree, and two counts of burglary in violation of R.C. 2911.12, both felonies of the second degree. On December 19, 2013, a Franklin County Grand Jury indicted appellant on one count of burglary in violation of R.C. 2911.12, a felony of the second degree, one

count of theft in violation of R.C. 2913.02, a felony of the fifth degree, and one count of receiving stolen property in violation of R.C. 2913.51, a felony of the fifth degree. On February 10, 2014, the trial court granted appellant's motion to discharge his trial counsel and proceed pro se with assistance of advisory counsel.

{¶ 11} On February 20, 2014, a jury found appellant guilty of all counts. On February 25, 2014, the trial court sentenced appellant, merging the theft count with the receiving stolen property count. The court imposed a sentence of six years for each of the three counts of burglary, to be served consecutively to each other for a total of eighteen years, and a total of three years as to all other counts, to be served concurrently with the sentences for the counts of burglary.  Appellant timely appealed.

{¶ 12} On July 18, 2014, appellant filed a motion to discharge his appellate counsel which was granted on July 21, 2014. Appellant was granted an extension of time to file a supplemental brief, which he filed pro se on July 30, 2014.  Plaintiff-appellee, State of Ohio ("the state"), filed responses to appellant's merit brief and his supplemental brief.

## II. Assignments of Error

{¶ 13} Appellant appeals, assigning the following three errors in his original merit brief and an additional eight errors in his supplemental brief for our review:

Appellant's first brief:

[I.] THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED HIM THE RIGHT TO CALL AN ALIBI WITNESS FOR HIS DEFENSE.

[II.] THE APPELLANT'S INDICTMENTS FOR BURGLARY AND RECEIVING STOLEN PROPERTY SHOULD NOT HAVE BEEN JOINED TOGETHER AS COMPRISING PART OF A COMMON SCHEME OR PLAN.

[III.] THE APPELLANT'S CONVICTIONS FOR BURGLARY AND RECEIVING STOLEN PROPERTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Appellant's Supplemental Brief:

[I.] APPELLANT CONTENDS THAT HIS RIGHTS TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH, SIXTH, AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTI-
TUTIONS [SIC] WERE DELIBERTATELY VIOLATED
WHEN THE TRIAL COURT ALLOWED THE JURY TO
CONVICT, AND THAN [SIC] THE COURT SENTENCED
THE APPELLANT ON THE CHARGE OF ATTEMPTED
BURGLARY IN A SHAM LEGAL PROCESS WITHOUT
HAVING ACQUIRED SUBJECT-MATTER JURISDICTION
AND (2) ALLOWING MRS. TINTERA TO TESTIFY, AS HER
TESTIMONY WAS IRRELEVANT ON ANY ISSUE THAT
WAS BEFORE THE COURT, AND THE COURT (3) GAVE
INSUFFICIENT JURY INSTRUCTIONS ON THE ISSUE OF
OTHER BAD ACTS CRIM RULE 52 (B), CAUSING A
DEFECTIVE VERDICT.

[II.] APPELLANT CONTENDS THAT THIS CONSTI-
TUTIONAL RIGHTS TO DUE PROCESS, AND EQUAL
PROTECTION OF THE LAW UNDER THE FOURTEENTH
AMENDMENT TO THE UNITED STATES [CONSTITUTION]
WAS VIOLATED WHEN THERE WAS STATE WITNESS
MISCONDUCT BY POLICE OFFICER, DAVID LARRISON
THAT PREVENTED APPELLANT FROM HAVING A FAIR
TRIAL, AND THE JURY FROM PROPERLY FUNCTIONING,
AND FAILED TO PRESERVE EVID [SIC].

[III.] APPELLANT CONTENDS THAT HE WAS DENIED
DUE PROCESS AND EQUAL PROTECTION OF THE LAW
UNDER THE FIFTH, AND THE FOURETEENTH AMEND-
MENTS TO THE UNITED STATES CONSTITUTIONS [SIC],
AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTI-
TUTION WHERE PROSECUTORIAL MISCONDUCT PRE-
VENTED APPELLANT FROM HAVING A FAIR TRIAL, AS
THE PROSECUTOR (1) KNOWINGLY USED FALSE TESTI-
MONY TO GAIN THE CONVICTIONS, AND (2) ARGUED
FACTS NOT SUPPORTED BY THE EVIDENCE.

[IV.] THE APPELLANT CONTENDS THAT HIS CONSTI-
TUTIONAL RIGHTS TO DUE PROCESS AND EQUAL
PROTECTION OF THE LAW UNDER THE FIFTH, AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
[CONSTITUTION] WERE VIOLATED WHEN APPELLANT'S
CONVICTIONS AND SENTENCES ARE BOTH CONTRARY
TO LAW, AND AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE, THEY FAILED TO PROVE IDENTITY, AND
TRESPASS.

[V.] APPELLANT CONTENDS THAT HIS FIFTH AND FOURTEENTH AMENDMENT RIGTHS UNDER THE UNITED STATES CONSTITUTIONS [SIC] WERE VIOLATED WHEN THE STATE CONVICTED AND SENTENCED APPELLANT OF CRIMES NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE, THEY FAILED TO PROVE IDENTITY, TRESPASS, AND MODUS OPERANDI.

[VI.] APPELLANT CONTENDS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH AND SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS [SIC] AND SECTION 10 ARTICLE 1 OF THE OHIO CONSTITUTION, WHEN HE WAS PREVENTED FROM HAVING A FAIR TRIAL WITH REASONABLE, AND RELIABLE RESULTS DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING THE PRE-TRIAL INVESTIGATIVE, AND ADVISORY STAGES OF THE PROCEEDINGS.

[VII.] APPELLANT CONTENDS THAT THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION AND DENIED APPELLANT DUE PROCESS, AND EQUABL [SIC] PROTECTION OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE JUDGE FAILED TO ACT IMPARTIAL. (2) DENIED APPELLANT'S REQUEST FOR A SHORT CONTINUANCE IN ORDER TO PREPARE FOR TRIAL AND OBTAIN DEFENSE WITNESSES. (3) FOR MISJOING INDICTMENTS. (4) FAILING TO RULE IN FAVOR OF APPELLANT'S THREE REQUEST[S] FOR CRIMINAL RULE 29 ACQUITTALS. (5) FOR GIVING FLAWED JURY INSTRUCTIONS WHICH PREJUDICED THE APPELLANT, AND FOR FAILNG TO MERGE SENTENCES AFTER HAVING RULED THAT THE CRIMES WERE ONE SCHEME, AND ONE COURSE OF CRIMINAL CONDUCT ALLIED OFFENSES, WHICH VIOLATED R.C. 2941.25, AND (7) DENYING APPELLANT THE COMPULSORY PROCESS, MAKING REISSUABLE ERRORS, AND HANDING DOWN A DETERRENT PUNNISHMENT.

[VIII.] APPELLANT CONTENDS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE 5TH, 8TH AND 14TH AMENDMENTS TO THE UNITED STATES, CONSTITUTIONS [SIC] AND OHIO STATUTORY LAWS WHEN

APPELLANT WAS PLACED IN PRISON UPON A SENTENCE WHICH WAS IMPOSED CONTRARY TO LAW, AS SAID SENTENCE DID NOT MEET THE REQUIRE-MENTS MANDATED BY R.C. 2929.14 (C)(4).

For ease of discussion, where applicable, appellant's assignments of error will be addressed together.

### III. Subject-Matter Jurisdiction

{¶ 14} We first address appellant's argument raised in his first supplemental assignment of error, which contends that the trial court lacks subject-matter jurisdiction over these cases. Because this is a criminal matter and the incidents in question occurred in the county in which the trial court is situated, we find no merit in appellant's assertions regarding subject-matter jurisdiction. *See* R.C. 2931.03 (defining jurisdiction of the courts of common pleas). Therefore, insofar as appellant's first supplemental assignment of error asserts error with respect to the subject-matter jurisdiction of the trial court, the first supplemental assignment of error is overruled as to the issue of subject-matter juris-diction.

### IV. Request for Continuances

{¶ 15} In his first assignment of error and the second part of his seventh supplemental assignment of error, appellant asserts generally that the trial court erred by denying his request for a continuance. He asserts specifically that the court erred by denying his request for a continuance made on the day of trial because appellant sought to call an alibi witness.

{¶ 16} We review a trial court's decision to deny a request for a continuance for abuse of discretion. *Hamad v. Hamad*, 10th Dist. No. 12AP-617, 2013-Ohio-2212, ¶ 13, citing *Young v. Young*, 10th Dist. No. 11AP-1148, 2012-Ohio-4377, ¶ 6. "[A]buse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17} When examining a trial court's denial of a motion for a continuance, a reviewing court "must weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the efficient dispatch of justice."

*State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Factors to consider when reviewing a motion for a continuance include, but are not limited to, the following: " 'the length of delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.' " *Woods* at ¶ 24, quoting *Unger* at 67-68.

{¶ 18} Appellant contends that the trial court abused its discretion by refusing to grant his request for a continuance because he sought to call an alibi witness. Although appellant concedes that his disclosure of the existence of an alibi witness was not timely under Crim.R. 12.1, he nevertheless contends that the trial court should have granted him a continuance because he was acting pro se and had difficulties conducting legal research that might have revealed the need to comply with Crim.R. 12.1. The state responds that, even if appellant's witness were to testify as he expected, she would not have provided an alibi but, rather, only corroborated the fact that he was at the scene of the burglary just before the burglary took place. However, even if the witness could be construed as an alibi witness, the state contends that the trial court acted within its discretion in denying appellant's request since it was being utilized as a tactic to delay trial.

{¶ 19} Crim.R. 12.1 provides as follows:

> Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.

We have previously stated that the defense of alibi "means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, and hence could not have been involved in the offense." *State v. Carter*, 10th Dist. No. 03AP-778, 2005-Ohio-291, ¶ 49, citing *State v. Payne*, 104 Ohio App. 410 (10th Dist.1957). "Black's Law Dictionary defines an alibi as 'a defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the "relevant time." ' " *Carter* at ¶ 49, quoting *Black's Law Dictionary* (7 Ed.Rev.1999) 72.

{¶ 20} To determine whether the trial court abused its discretion in applying Crim.R. 12.1 to exclude evidence of alibi, a reviewing court must consider the following factors: (1) whether the newly asserted alibi evidence prejudices the prosecution's case; (2) whether there was a demonstrable and excusable showing of mere negligence; or (3) whether there was good cause shown. *State v. Smith*, 17 Ohio St.3d 98, 104 (1985). "Stated alternatively, when the alibi evidence does not surprise or otherwise prejudice the prosecution's case, and when it is apparent that the defense acted in good faith, the exclusion of alibi evidence can constitute an abuse of discretion." *State v. Clinkscale*, 10th Dist. No. 98AP-1586 (Dec. 23, 1999). The notice requirement for an alibi defense serves to "protect the prosecution from false and fraudulent claims of alibi, often presented by the accused so near the date of the trial as to make it nearly impossible for the prosecution to ascertain any facts as to the credibility of the witnesses called by the accused." *Clinkscale*, citing *State v. Thayer*, 124 Ohio St. 1, 4 (1931). *See also Williams v. Florida*, 399 U.S. 78 (1970).

{¶ 21} In *Smith*, the Supreme Court of Ohio examined the application of Crim.R. 12.1. After the state had rested, and with no prior notice, the defendant's counsel announced his intention to call his client and other alibi witnesses to establish that the defendant was somewhere else at the time of the offense. Because defense counsel had not filed a notice of alibi pursuant to Crim.R. 12.1, nor informed the prosecution of the intended use of the alibi defense, the trial court ruled that the defendant would be permitted to testify as to his alibi but could not call any alibi witnesses. Because the state would have suffered prejudice had the evidence been allowed at trial and because there was "some indicia of proof that the alibi evidence was withheld from the prosecution in

bad faith as a planned trial tactic," the Supreme Court found that the trial court did not abuse its discretion in excluding the alibi evidence.  *Smith* at 1134.

{¶ 22} Here, the transcript reflects the following discussion regarding the potential testimony of the witness sought by appellant:

> THE COURT: And she - - you would expect her to testify as to what?
>
> [APPELLANT]: That I never had a bicycle. I was talking to her in the back of the apartment while this other person, whoever, was riding up, climbing through a window.
>
> THE COURT: So basically it is an alibi witness. You're saying she can testify that you were somewhere else when this happened.
>
> [APPELLANT]: Right, at the same time that this maintenance man is saying that he seen somebody ride up on a bicycle, I was talking to her. I didn't have a bicycle.

(Tr. 46.) Thus, based on appellant's assertions regarding the potential testimony to be offered by this witness, the trial court concluded, and appellant agreed, that appellant sought to introduce the witness's testimony to prove an alibi.

{¶ 23} Several factors demonstrate that appellant's request for a continuance to present alibi testimony operated as a tactic to delay the proceedings. First, at the February 10, 2014 oral hearing in which the trial court reviewed appellant's request to represent himself, appellant made no mention of an alibi witness or the need to continue the trial date to subpoena additional witnesses. Additionally, appellant did not move for a continuance, nor did he attempt to alert the court to the need to subpoena an additional witness during the hearing on the morning of February 18, 2014, at which the trial court ruled on the state's motion for joinder of the indictments and addressed appellant's motions in limine. Instead, appellant waited until the afternoon session on February 18, 2104 until immediately before the jury was selected to inform the court that he required a continuance to subpoena an additional witness. Thus, it is a reasonable inference that appellant's failure to inform the court regarding the existence of the alleged alibi witness until such time was an intentional tactic to delay the proceedings. Additionally, the trial court found that the granting of the continuance would have imposed a substantial

burden on the court as it had cleared its business for the trial. Therefore, we cannot say that the trial court abused its discretion in refusing to grant appellant's request for a continuance.

{¶ 24} Further, here, as in *Smith*, the state was unaware of the identity of the alleged alibi witness and, therefore, had no motive or opportunity to question the witness prior to the day of trial when appellant disclosed the existence of the alleged alibi witness. *Id.* at 104. As a result, the state had no opportunity or motive to question the witness or to investigate facts. Even if the continuance had been granted, the state would have suffered prejudice as it was prepared for trial, having subpoenaed and made its witnesses available to testify. *See State v. Stevens*, 2d Dist. No. 16509 (Apr. 3, 1998) (where defendant waited until first day of trial to file notice of alibi, trial court did not abuse its discretion in excluding alibi testimony), *declined to review in* 82 Ohio St.3d 1474. Additionally, appellant failed to show good cause for why this witness, whose existence was known to him, was not disclosed until moments before the case was to proceed to trial.

{¶ 25} Accordingly, we overrule appellant's first assignment of error and the second part of his seventh supplemental assignment of error.

## V. Joinder

{¶ 26} In his second assignment of error and the third part of his seventh supplemental assignment of error, appellant asserts that the November 21 and December 19, 2013 indictments should not have been joined. Relatedly, in the third and final part of his first supplemental assignment of error and the fifth part of his seventh supplemental assignment of error, appellant asserts that the trial court erred in instructing the jury regarding other bad acts. Appellant contends that the charges for burglary, attempted burglary, theft, and receiving stolen property are neither the same or similar, and joinder and other bad acts do not constitute a common scheme or design. The state responds that appellant failed to renew his objection to joinder at the close of the state's case or at the conclusion of all the evidence, and, therefore, the plain-error standard applies. The state also contends that appellant does not meet his burden of showing prejudice as a result of joinder and that, even if appellant could demonstrate prejudice, such showing could be rebutted by the state's showing that the evidence of the

other crimes would be admissible under Evid.R. 404(B) or by showing that the evidence of each crime is simple and direct.

{¶ 27} Because appellant did not renew his objection to joinder of the charged offenses at the close of the presentation of the state's evidence or at the close of the presentation of all evidence, he has waived all but plain error. *State v. Wilson*, 10th Dist. No. 10AP-251, 2011-Ohio-430, ¶ 12, citing *State v. Williams*, 10th Dist. No. 02AP-730, 2003-Ohio-5204, ¶ 29. "Under the plain error test, a reviewing court must consider whether, 'but for the existence of the error, the result of the trial would have been otherwise.' " *Wilson* at ¶ 12, quoting *State v. Wiles*, 59 Ohio St.3d 71, 86 (1991).

{¶ 28} Under Crim.R. 13, a trial court may order two or more indictments to be tried together "if the offenses or the defendants could have been joined in a single indictment or information." Pursuant to Crim.R. 8(A), two or more offenses may be charged in the same indictment if they are of "the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' " *State v. Lott*, 51 Ohio St.3d 160 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340 (1981). "Nonetheless, an accused may move to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder of multiple offenses." *Wilson* at ¶ 13, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 49.

{¶ 29} To prevail on a motion to sever, a defendant " 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.' " *Wilson* at ¶ 14, quoting *Lott* at 163. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision to deny severance. *Wilson* at ¶ 14, citing *Lott* at 163.

{¶ 30} However, even if the defendant establishes prejudice resulting from the joinder, the state may rebut the showing of prejudice in two ways. First, the state can demonstrate that evidence of one offense would be admissible at a separate trial of the other offense under Evid.R. 404(B). *Wilson* at ¶ 15, citing *State v. Tipton*, 10th Dist. No. 04AP-1314, 2006-Ohio-2066, ¶ 27; *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-

1507, ¶ 30. Evid.R. 404(B) recognizes that evidence of other crimes may be admissible if the evidence pertains to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Second, the state can demonstrate that evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense. *Wilson* at ¶ 15; *Brinkley* at ¶ 30. "These two tests are disjunctive, so that the satisfaction of one negates a defendant's claim of prejudice without having to consider the other test." *Wilson* at ¶ 15, citing *State v. Gravely*, 10th Dist. No. 09AP-440, 2010-Ohio-3379, ¶ 38.

{¶ 31} Here, appellant contends that evidence of the separate incidents would not be admissible as "other-acts" evidence under Evid.R. 404(B). Appellant states that the October 21 burglary did not "establish the requisite 'scheme, plan or system,' much less 'the immediate background' forming the 'foundation' for the subsequent November 13 burglary which occurred in a wholly different location, different date and different time of day as that of the earlier burglary." (Appellant's Merit Brief, 12.) In response, the state argues that evidence of the separate burglaries would have been admissible under Evid.R. 404(B) to prove identity.

{¶ 32} "For other-acts evidence to be admissible to prove identity, the 'other-acts evidence must be related to and share common features with the crime in question.' " *State v. Massey*, 10th Dist. No. 99AP-1355 (Nov. 28, 2000), quoting *State v. Lowe*, 69 Ohio St.3d 527 (1994), paragraph one of the syllabus. Evidence of other acts is admissible to prove identity if there is "substantial proof that the alleged other acts were committed by the defendant." *Lowe* at 530. *See also State v. Parnell*, 10th Dist. No. 11AP-257, 2011-Ohio-6564, ¶ 31.

{¶ 33} In *Massey*, the defendant asserted that the trial court erred by joining four separate indictments containing thirteen charges arising from four separate incidents for trial. Specifically, the defendant contended that the joinder allowed the jury to hear inadmissible "other-acts" evidence from the separate cases. In response, the prosecution argued that the other-acts evidence was admissible under Evid.R. 404(B) to prove identity. We concluded that the other-acts evidence would have been admissible even if the cases had been tried separately because (1) all of the cases shared a "temporal, modal, and situational relationship"; (2) the victim in each case was a business and the method of

accomplishing the crime was comparable; (3) witnesses to three of the crimes identified the defendant as the perpetrator, and property from two of the crimes was recovered from the defendant's possession; and (4) the jury was given a limiting instruction on the use of the other-acts evidence. *Id.*

{¶ 34} First, we note that, as in *Massey*, appellant has failed to specifically point to any evidence of actual prejudice arising from the trial court's joinder of his indictments. A defendant asserting prejudice as a result of joinder "may not prevail by presuming prejudice based on the number of counts." *Id.* Because appellant has "failed to suggest how he likely would have been acquitted on some counts had the * * * incidents been tried separately," we need not consider whether the trial court abused its discretion in granting the state's motion to join the indictments. *Id.*

{¶ 35} Nevertheless, in the interest of justice, we will consider whether the state could rebut a showing of prejudice by demonstrating that evidence of the other crimes would be admissible even if the indictments were severed. As in *Massey*, the charged offenses here share a "temporal, modal, and situational relationship." *Id.* The incidents in question took place within weeks of one another, a period of time shorter than the charged offenses in *Massey*. Additionally, the victims in each case were residents of homes or apartments, and the method of accomplishing the crimes was comparable; namely, the entry or attempted entry into unsecured dwellings. *See Wilson* at ¶ 21 (finding that the evidence demonstrated that "the crimes followed a similar pattern and were geographically linked such that the evidence of any one of the robberies would have been admissible at the trial of each of the others under Evid.R. 404(B) to establish appellant's identity"); *Massey*. Finally, the victims of each of the burglaries identified property recovered from appellant as belonging to them.

{¶ 36} The trial court also issued the following charge to the jury regarding the other acts evidence admitted at trial:

> Evidence was admitted of another act which may have been committed by the Defendant. You are to consider this evidence on the issue of identity. If you believe that the Defendant committed the other act, you may consider evidence of scheme, plan or system as you decide whether the acts alleged in the indictment, if committed, were committed by the Defendant rather than some other person.

> Let me caution you that the evidence of scheme, plan or system is only one of the things you are to consider in determining identity. The State must prove identity beyond a reasonable doubt. If you find that the Defendant committed the other act, you may not presume that he committed the acts charged. You may, however, consider the other act along with all other evidence in deciding whether the State has proved beyond a reasonable doubt that the Defendant rather than some other person committed the offenses charged.

(Tr. 300-01.) Appellant argues without supporting his argument that this instruction was in error because it failed to instruct the jury as to the importance of considering each count and evidence applicable to each count separately. We note that the trial court instructed the jury on each offense and that the instructions include the admonition that "[i]f you find that the Defendant committed the other act, you may not presume that he committed the acts charged." (Tr. 301.)

{¶ 37} Furthermore, the Ohio Jury Instructions for other acts evidence read as follows:

> Evidence was received about the commission of (crime[s]) (wrong[s]) (act[s]) other than the offense(s) with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in (conformity) (accordance) with that character. If you find that the evidence of other (crime[s]) (wrong[s]) (act[s]) is true and that the defendant committed (it) (them), you may consider that evidence only for the purpose of deciding whether it proves
>
> * * *
>
> (a) the absence of (mistake) (accident)
>
> (*or*)
>
> (b) the defendant's (motive) (opportunity) (intent or purpose) (preparation) (plan) to commit the offense charged in this trial,
>
> (*or*)

(c) knowledge of circumstances surrounding the offense charged in this trial,

(*or*)

(d) the identity of the person who committed the offense in this trial

(*or*)

(e) (*describe other purposes*).

That evidence cannot be considered for any other purpose.

(Emphasis sic.) *Ohio Jury Instructions*, CR Section 401.25. Here, as we earlier noted, the trial court instructed that, "[i]f you find that the Defendant committed the other act, you may not presume that he committed the acts charged." (Tr. 301.) This instruction and the outline provided in the Ohio Jury Instructions serve a similar, limiting purpose, and the trial court's instruction may be considered to contain an even stronger admonition against the presumption of guilt arising out of the admission of other-acts evidence by requiring the jurors to consider the other acts and the charged offenses separately. Therefore, given the foregoing and considering that appellant fails to support his arguments, we cannot find that the trial court's other-acts instruction constituted an abuse of discretion. *State v. Smith*, 10th Dist. No. 01AP-848, 2002-Ohio-1479, citing *Jenkins v. Clark*, 7 Ohio App.3d 93, 100 (2d Dist.1982) ("It is well established that a trial court has broad discretion in instructing the jury.").

{¶ 38} We further find that the trial court specifically instructed the jury that it was to consider the other-acts evidence that was admitted for the purpose of determining identity, one of the enumerated exceptions to the general prohibition on other-acts evidence. *See State v. Broom*, 40 Ohio St.3d 277, 281 (1988) (noting that the jury "was given a carefully drafted limiting instruction to explain that the evidence concerning those two incidents was admitted only for the purpose of considering whether those acts tended to show intent, motive, scheme, plan or system" for the charged crimes); *Massey*. As a result, we conclude that the state could rebut a showing of prejudice resulting from joinder of the indictments because the evidence of the other crimes would be admissible under Evid.R. 404(B) to prove identity even if the indictments were severed.

{¶ 39} Although the satisfaction of the other-acts test would ordinarily end the analysis, we nonetheless further find that the state can rebut a showing of prejudice because the evidence of the offenses joined at trial was simple and direct, thus precluding juror confusion resulting from joinder. "Evidence is 'simple and direct' if the jury is capable of segregating the proof required for each offense." *Wilson* at ¶ 23, citing *State v. Cameron*, 10th Dist. No. 09AP-56, 2009-Ohio-6479, ¶ 35.

{¶ 40} Here, the separate incidents in the two indictments involved a simple set of facts and a limited number of witnesses whose testimony was straightforward. Additionally, as noted above, the trial court instructed the jurors regarding the admissibility and limited purpose of other-acts evidence. *See Wilson* at ¶ 24-25 (noting that a "jury is presumed to follow the instructions of the court"). As a result, because the evidence was simple and direct, the possibility of jury confusion was extremely remote such that any claim of prejudice arising from joinder would be negated. *See State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 21-24; *Wilson* at ¶ 23-25.

{¶ 41} In conclusion, we find no error in the trial court's decision to join the two indictments for trial and we find no abuse of discretion in the trial court's jury instructions relating to other-acts evidence. Accordingly, we overrule appellant's second assignment of error, the third and final part of his first supplemental assignment of error, and the third and fifth parts of his seventh supplemental assignment of error.

## VI. Sufficiency and Manifest Weight

{¶ 42} It is difficult to decipher some of appellant's arguments. Indeed, several of his assignments of error are phrased in such a way as to allege error in the admission of evidence, police misconduct, prosecutorial misconduct, and judicial bias. Nevertheless, after careful review, we find that appellant's third assignment of error, the second part of his first supplemental assignment of error, his second supplemental assignment of error, his third supplemental assignment of error, his fourth supplemental assignment of error, his fifth supplemental assignment of error, and the fourth part of his seventh supplemental assignment of error essentially assert that his convictions were against the manifest weight of the evidence and not supported by the sufficiency of the evidence.

{¶ 43} We first review appellant's claim that his convictions were insufficiently supported by the evidence. Sufficiency of evidence is a "legal standard that tests whether

the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.* at 273.

{¶ 44} Appellant's only argument regarding the sufficiency of the evidence reduces to the contention that nothing in the record established that appellant entered the homes of the victims of this case. Appellant argues that the act of trespassing into the residence is an essential element of the crime of burglary, and, as a matter of law, his convictions cannot stand since there was no evidence of such at trial. Although we agree that trespass is an element of the offense of burglary, appellant's argument fails to appreciate that convictions can be sustained based on circumstantial evidence. *See State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 34, quoting *State v. Fausnaugh*, 10th Dist. No. 11AP-842, 2012-Ohio-4414, ¶ 26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991) (" 'Under Ohio law * * * circumstantial evidence can have the same probative value as direct evidence, and "[a] conviction can be sustained based on circumstantial evidence alone." ' "). Here, the victims provided circumstantial evidence of burglary by identifying their property recovered from appellant, stating that such property was inside their respective residences before police recovered the property from appellant, and confirming that appellant did not have permission to enter their residences or to take their property. Thus, ample circumstantial evidence supported the element of trespass in the charged offenses, and we, therefore, find appellant's arguments regarding the sufficiency of the evidence to be without merit.

{¶ 45} We next examine appellant's contentions regarding the manifest weight of the evidence. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing

belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202 ¶ 25. *See also Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 46} First, appellant argues that his conviction for attempted burglary is against the manifest weight of the evidence because Tintera could not identify him at trial as the man who attempted to gain access to her residence on November 13, 2013. He also argues that she did not identify him upon his apprehension but only provided police with a "vague clothing description of a suspect." (Appellant's Supplemental Brief, 1.) However, "[t]he identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. McClurkin*, 10th Dist. No. 11AP-944, 2013-Ohio-1140, ¶ 43, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046.

{¶ 47} Here, ample circumstantial evidence existed to allow the jury to conclude that appellant was the man who attempted to gain access to Tintera's residence. At trial, Tintera testified that the man attempting to open the front door to her residence was "attempting to open the door as I locked the door." (Tr. 142.) Tintera further testified that lights in her residence, including her porch light, were on when she was locking her door. Tintera testified that there was only a glass panel between her and the man and that they were only about a foot apart. Tintera testified that, although she could not identify him in court because "[i]t was a long time ago," she stated that appellant matched the general description of the man who attempted to enter her home. (Tr. 145.) Based on Tintera's testimony regarding the general description of appellant and the fact that police arrested appellant later that same day, after observing him matching the description provided by

Tintera, circumstantial evidence provided support for the identification of appellant as the man who attempted to enter Tintera's residence. *McClurkin* at ¶ 43. Thus, we cannot say that the jury lost its way by concluding that appellant was the man who attempted to gain access to Tintera's residence.

{¶ 48} Regarding the charges arising out of the events of October 21, 2013, appellant also attacks the credibility of Officer Larrison, Dunn, and Schneider. We find appellant's arguments regarding the credibility of the witnesses to be unavailing given the other evidence supporting his convictions. Testimony from Officer Larrison, Schneider, and Dunn supported appellant's convictions for theft, receiving stolen property, and burglary arising out of the incident on October 21, 2013. Dunn and Officer Larrison both testified that they saw appellant carrying a laptop and other electronic equipment in the hallway of the apartment complex where Schneider lived. Schneider testified that the items found in appellant's possession belonged to her and that appellant did not have her permission to be present in her apartment or to possess her property. Appellant fails to point to any evidence in the record that casts serious doubt upon the credibility of the witnesses or their accounts.

{¶ 49} Further, regarding the charges arising out of the events of November 13, 2013, Officer Hall, Officer Rees, Takayama, and Kotalo provided testimony supporting appellant's convictions for burglary. Officer Hall identified appellant at trial as the man he pursued who matched the description given earlier by Tintera of the man who was attempting to gain access to her residence. Officer Rees testified that he discovered appellant, who matched Tintera's description, traveling erratically between houses. Officer Rees further testified that appellant was carrying in his possession items that were later identified as belonging to Takayama and Kotalo. Takayama and Kotalo both testified that the items recovered from appellant by the officers belonged to them, that such items were last seen in their respective homes, and that appellant did not have permission to possess their property. Finally, we find the testimony of Schneider regarding the value of the property at issue in the charge of receiving stolen property was sufficient. Schneider testified that the value of her laptop was between $1,200 to $1,400, the value of her iPod was around $100, and the value of her cell phone was $400. (Tr. 160-61.) Appellant

points to nothing in the record to dispute the value of the items offered by Schneider at trial.

{¶ 50} Thus, considering the credibility of the witnesses and the evidence presented at trial, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Vencill*, 10th Dist. No. 11AP-1050, 2012-Ohio-4419, ¶ 13-14.

{¶ 51} In conclusion, we find that sufficient evidence supported appellant's convictions and that such convictions were not against the manifest weight of the evidence. Accordingly, we overrule appellant's third assignment of error, the second part of his first supplemental assignment of error, his second supplemental assignment of error, his third supplemental assignment of error, his fourth supplemental assignment of error, his fifth supplemental assignment of error, and the fourth part of his seventh supplemental assignment of error.

## VII. Ineffective Assistance of Counsel

{¶ 52} In his sixth supplemental assignment of error, appellant alleges ineffective assistance of counsel during the pretrial, investigative, and advisory stages of the proceedings. A convicted defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution; and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, *cert. denied*, 497 U.S. 1011 (1990).

{¶ 53} "Judicial scrutiny of counsel's performance must be highly deferential * * * [and] [a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. In Ohio, a properly licensed attorney is presumed competent. *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 20, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998).

" 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *Bradley* at paragraph three of syllabus.

{¶ 54} Initially, we must address appellant's contentions that he was prejudiced by his trial counsel's withdrawal from the case and that he was "tricked" into representing himself. Nothing in the record supports appellant's contention that he did not intend to exercise his right to self-representation. The record reflects that appellant's counsel informed the court weeks before trial that appellant wished to represent himself. Further, at an oral hearing before the trial court, the trial court engaged in a lengthy colloquy with appellant to determine if he wished to exercise his right to self-representation and whether he was capable of so doing. Throughout the discussion with the trial court, appellant repeatedly acknowledged that he was exercising his right to self-representation.[1] We have previously stated that, if an appellant was responsible for what he or she now claims to be error, he or she is precluded from arguing it. *See In re Magnus*, 10th Dist. No. 01AP-411 (Sept. 13, 2001), citing *State v. Seiber*, 56 Ohio St.3d 4, 17 (1990). Accordingly, we find appellant's contentions of ineffective assistance of counsel with regard to his attorney's withdrawal are without merit.

{¶ 55} Next, appellant asserts that he received ineffective assistance of counsel during the pretrial stage of the proceeding. In support of this contention, appellant contends that his counsel erred by failing to file "appropreate [sic] pre-trial motions such as motions to suppress, motions to dismiss, and motions against prejudicial misjoinder of indictments."  (Appellant's Supplemental Brief, 17.)

{¶ 56} " 'When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular motion, a defendant must show that the motion had a reasonable probability of success.' " *State v. Jones*, 10th Dist. No. 11AP-1123, 2012-Ohio-3767, ¶ 31, quoting *State v. Carmon*, 10th Dist. No. 11AP-818, 2012-Ohio-1615, ¶ 12. The Supreme Court of Ohio has held that the " '[f]ailure to file a suppression motion does not

---

[1] *See* Tr. 6-20.  Appellant states: "Only thing I can't claim on appeal will be ineffective assistance of counsel because I'm representing myself." (Tr. 19.)

constitute per se ineffective assistance of counsel.' " *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). *See also State v. Haas*, 10th Dist. No. 10AP-35, 2011-Ohio-2676, ¶ 45. Appellant cites to no relevant authority to demonstrate that any of the suggested motions would have had a reasonable probability of success. Furthermore, appellant himself filed motions to dismiss the indictment and motions to suppress evidence in both cases. The trial court heard arguments on appellant's motions and determined that they were without merit. As a result, even if appellant's trial counsel was deficient, appellant fails to show prejudice from his counsel's failure to file motions that appellant himself filed and that were ruled upon by the trial court. *Griffin* at ¶ 39.

{¶ 57} Additionally, appellant asserts that his attorney erred by failing to investigate and subpoena witnesses for trial. However, the record is not fully developed as to the allegations made by appellant regarding the investigation conducted by his attorney. "When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal." *State v. Davis*, 10th Dist. No. 05AP-193, 2006-Ohio-193, ¶ 19, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983). *See also State v. Hubbard*, 10th Dist. No. 89AP-1000 (Nov. 7, 1989) ("Since it is obvious that the issues raised would require evidence outside the record of the trial court's proceedings leading up to the judgment of conviction, leave to appeal is not appropriate since defendant has not demonstrated that error in the proceedings themselves occurred. Thus, even assuming that defendant's counsel was ineffective as defendant contends, a motion for leave to appeal from the conviction is not an available means of raising the issue."). Here, even if appellant was able to demonstrate that his trial counsel was deficient in failing to identify and subpoena appellant's alleged witnesses, determination of appellant's claim of ineffective assistance of counsel would require evidence outside the record to determine whether counsel's action or inaction prejudiced appellant. *Davis* at ¶ 19. Thus, appellant's arguments regarding ineffective assistance of counsel in the investigation of potential witnesses are not before us in the present matter.

{¶ 58} Appellant additionally contends that his standby counsel was ineffective because he was not familiar with appellant's case. Here, appellant elected to exercise his

right of self-representation. In Ohio, "a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel," but "these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 32. Thus, appellant cannot complain that he failed to receive effective assistance of counsel because "he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d 1, 6-7 (1987). Further, appellant points to nothing in the record to suggest that his standby counsel rendered ineffective assistance, or that he was prejudiced by such deficient assistance. Therefore, we find appellant's arguments regarding the effectiveness of his standby counsel to be without merit.

{¶ 59} Accordingly, we overrule appellant's sixth supplemental assignment of error.

## VIII. Judicial Bias

{¶ 60} Appellant's seventh supplemental assignment of error also asserts a number of unrelated issues for our consideration. We have addressed the merits of the second, third, fourth, and fifth parts of his seventh supplemental assignment of error above, and will address the merits of his sentencing arguments below. However, we note that appellant asserts generally that the trial court exhibited bias against him during the course of the proceedings. Appellant fails to demonstrate with reference to the record any conduct on the part of the trial court that would suggest bias and provides no support for such a proposition by citation to pertinent authority. App.R. 16(A)(7). *See State v. L.E.F.*, 10th Dist. No. 13AP-1042, 2014-Ohio-4585, ¶ 19, citing *Sherman v. Sherman*, 10th Dist. No. 05AP-757, 2006-Ohio-2309, ¶ 15 ("It is not this court's duty to search the record for evidence to support an appellant's argument as to alleged error."); *Paranthaman v. State Auto Prop. & Cas. Ins. Co.*, 10th Dist. No. 14AP-221, 2014-Ohio-4948, ¶ 48, citing *Legacy Academy for Leaders v. Mt. Calvary Pentecostal Church*, 10th Dist. No. 13AP-203, 2013-Ohio-4214, ¶ 20 ("An appellate court may reject an argument on appeal when the appellant fails to cite any legal authority in support of that argument."); *Adams, Babner & Gitlitz, LLC v. Tartan West, LLC*, 10th Dist. No. 14AP-277, 2014-Ohio-5305, ¶ 20; *Reid v. Plainsboro Partners, III*, 10th Dist. No. 09AP-442, 2010-Ohio-4373, ¶ 22. We therefore decline to consider appellant's unsubstantiated allegation of bias in his seventh

supplemental assignment of error. Accordingly, we overrule the first part of appellant's seventh supplemental assignment of error.

## IX. Sentencing

{¶ 61} In the sixth part of his seventh supplemental assignment of error, appellant asserts that the trial court erred by failing to merge his sentences for burglary. First, the trial court did merge the offenses of theft and receiving stolen property arising out of the October 21, 2013 incident. Second, with regard to the burglary counts, appellant essentially argues that, because his cases were joined, his sentences should have merged. However, joinder and merger are distinct concepts. Joinder in the criminal context refers to the combination of several charges or cases for the purposes of trial, while merger deals with the absorption of a lesser-included offense into a more serious offense when a person is charged with both crimes.[2] When a trial court considers whether merger of offenses is appropriate under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 47. "[I]f the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has a separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. (Emphasis sic.) *Id.* at ¶ 51. Here, appellant's charges for burglary arose out of entirely separate incidents, and, therefore, the offenses would not merge under R.C. 2941.25. As a result, we find that appellant's arguments regarding merger have no merit. Accordingly, we overrule the sixth part of appellant's seventh supplemental assignment of error.

{¶ 62} In his eighth supplemental assignment of error, appellant asserts that the trial court erred by failing to state findings required for the imposition of consecutive sentences under R.C. 2929.14(C)(4), rendering his sentence void. The state responds that, although the trial court failed to journalize its findings in its judgment entry imposing

---

[2] "Joinder of indictments," is defined as follows: "The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information." *Black's Law Dictionary* 836 (6th Ed.1990). "Merger" in criminal law is defined as follows: "When a man commits a major crime which includes a lesser offense, or commits a felony which includes a tort against a private person, the latter is merged in the former." *Black's Law Dictionary* 989 (6th Ed.1990).

sentence as required by the decision of the Supreme Court of Ohio in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, the trial court nevertheless made the required findings at appellant's sentencing hearing. As a result, the state contends that, pursuant to *Bonnell*, appellant's sentence is not void but, rather, must be remanded to the trial court for the limited purpose of directing the trial court to issue a nunc pro tunc entry to correct its clerical error.

{¶ 63} R.C. 2929.14(C)(4) provides, as follows:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, the trial court is required to make at least three distinct findings: "(1) that consecutive sentences are necessary to protect the public from future crime *or* to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one

of the subsections (a), (b) or (c) applies." (Emphasis sic.) *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *Bonnell*.

{¶ 64} In *Bonnell*, the Supreme Court of Ohio held that a trial court seeking to impose consecutive terms of imprisonment is required to make the findings provided by R.C. 2929.14(C)(4) both at the sentencing hearing and to incorporate such findings into its sentencing entry. *Id.* at ¶ 37. However, the trial court need not state reasons to support its findings, nor is the court "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

{¶ 65} Here, the trial court made the following findings when it imposed consecutive terms of imprisonment:

> I don't know what goes through your mind, but obviously you don't appreciate how serious a burglary is as an offense. I mean, it not only shows a very serious disregard for people's privacy and people's property, it shows a very serious disregard for their safety.
>
> And it's not just like a theft offense. I mean, you leave people very fearful and insecure, and that's why the law considers it a very serious offense. And the fact that these occurred not too long after you were released from prison just indicates that -- [the prosecutor] has a very good point, the only time you're not breaking into people's houses is when you're locked up.
>
> So I have to give you a long sentence to protect the community. Anything less than that, I think, would be demeaning to the seriousness of the offenses when you have several different victims. They all feel like they should have a sentence that reflects the damage done to them.
>
> I'm going to give you six years on each one of the burglaries and make them consecutive, and it will be two years on the attempted burglary and one year on the theft and RSP, which merge. I'll make them concurrent, so the total sentence is 18 years for the three burglaries and the attempted burglary. Maybe when you're 70 years old, you won't be as apt to commit these kinds of crimes.
>
> * * *

> Well, I think I said that consecutive sentences are necessary to protect the public, and anything less than consecutive sentences would demean the seriousness of the offenses.

(Tr. 338-40.)

{¶ 66} For the following reasons, we find that the record reflects that the trial court engaged in the correct analysis and made the required finding. We also conclude that the record contains support for the trial court's findings.

{¶ 67} First, the trial court must find either that consecutive sentences are necessary to protect the public from future crime or to punish the offender. *Price* at ¶ 35. Here, the trial court stated explicitly that "consecutive sentences are necessary to protect the public." (Tr. 339.) The trial court stated that it was necessary to give appellant a "long sentence to protect the community." (Tr. 338.) Additionally, the trial court's statement that "the only time you're not breaking into people's houses is when you're locked up" demonstrates that the trial court was concerned about the need to protect the public from future criminal activity. (Tr. 338.) Therefore, we find that the trial court made the first required finding under R.C. 2929.14(C)(4).

{¶ 68} Second, the trial court was required to engage in a proportionality analysis. *Price* at ¶ 36-38. Here, the trial court explicitly stated that "anything less than consecutive sentences would demean the seriousness of the offense." (Tr. 339-40.) Additionally, the trial court stated that appellant did not "appreciate how serious a burglary is as an offense" because "it not only shows a very serious disregard for people's privacy and people's property, it shows a very serious disregard for people's safety." (Tr. 338.) The trial court additionally expressed concerns about any lesser sentence being demeaning to the seriousness of the offense because there were "several different victims" in this case. Therefore, we find that the trial court made the second required finding under R.C. 2929.14(C)(4).

{¶ 69} Finally, we must examine whether the trial court made findings consistent with one of the subsections of R.C. 2929.14(C)(4). Here, although there is potentially support in the record for a finding under either R.C. 2929.14(C)(4)(b) or (c), we find the trial court made sufficient findings under R.C. 2929.14(C)(4)(c) that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to

protect the public from future crime by the offender." Here, as earlier noted, the trial court mentioned concern with the fact that appellant committed these offenses "not too long after you were released from prison" and that "the only time you're not breaking into people's houses is when you're locked up." (Tr. 338.) This demonstrates that the trial court considered appellant's history of criminal conduct in fashioning an appropriate sentence. As we earlier mentioned, the trial court explicitly stated that the sentence was necessary to protect the public from future crime. Therefore, we find that the trial court made the findings required under R.C. 2929.14(C)(4)(c).

{¶ 70} Thus, although the trial court did not employ the precise statutory language in making its findings in support of a consecutive sentence, we find that the trial court's commentary at the sentencing hearing demonstrates that it did make the findings required by R.C. 2929.14(C)(4). Accordingly, we overrule appellant's eighth supplemental assignment of error to the extent that it alleges error in making the required findings at the sentencing hearing.

{¶ 71} However, because the trial court's February 25, 2014 judgment entry states only that the trial court "weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14," we must conclude that the trial court inadvertently failed to incorporate its findings into the sentencing entry. (Judgment Entry, 1-2.) As a result, pursuant to *Bonnell*, "[a] trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.* at ¶ 30. Accordingly, we remand this case to the trial court to issue "a nunc pro tunc entry incorporating findings stated on the record." *Id.* at ¶ 31.

## X. Other Assertions of Error

{¶ 72} Finally, in the seventh and final part of his seventh assignment of error, appellant asserts that the trial court erred by "denying appellant the compulsory process, making reissuable errors, and handing down a deterrent punishment." Appellant fails to support these assertions with arguments including reference to the record or pertinent authority. App.R. 16(A)(7). As a result, we decline to consider appellant's unsubstantiated

assertions of error in this regard. Accordingly, we overrule the seventh and final part of appellant's seventh supplemental assignment of error.

## XI. Disposition

{¶ 73} For the foregoing reasons, appellant's first three assignments of error and all eight of his supplemental assignments of error are overruled, and we affirm the judgment of the Franklin County Court of Common Pleas. However, having found that the trial court's judgment entry contains a clerical error, we remand this case to that court for it to issue a nunc pro tunc judgment entry correcting said error in accordance with law and consistent with this decision.

*Judgment affirmed; cause remanded with instructions.*

SADLER, P.J., and CONNOR, J., concur.

_____