[Cite as *State v. Dinger*, 2022-Ohio-608.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
|     Plaintiff-Appellee | |
| -vs- | Case No. 2020CA00177 |
| CHRISTOPHER DINGER | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:    Appeal from the Stark County Court of
Common Pleas, Case No. 2020-CR-1128

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    March 2, 2022

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

TIMOTHY E. YAHNER
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South, Ste. #510
Canton, Ohio 44702-1413

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue, N.W.
Suite #808
Canton, Ohio 44702

*Hoffman, P.J.*

　　**{¶1}**　Defendant-appellant Christopher Dinger appeals the judgment entered by the Stark County Common Pleas Court convicting him of kidnapping (R.C. 2905.01(A)(3),(C)(1)) and menacing by stalking (R.C. 2903.211(A)(1),(B)(2)(e)), and sentencing him to an aggregate prison term of eight to twelve years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

　　**{¶2}**　Appellant and K.L., the victim in this case, were involved in a turbulent romantic relationship, which K.L. attempted to end. Appellant was unhappy with K.L.'s attempts to end the relationship, and began following her. Appellant went to K.L's home at 4:00 a.m. one morning, uninvited, because he suspected she was seeing someone else. On a different occasion, Appellant approached K.L. and her friend, but fled when they threatened to call the police.

　　**{¶3}**　On June 16, 2020, K.L. was at the home of her friend, M.D., watching television. Appellant arrived at M.D.'s home, driving a black Chevrolet Camaro convertible. Appellant pounded on the door of the residence, demanding that K.L. come outside. M.D. answered the door, and Appellant pushed his way past M.D. Appellant grabbed K.L., covered her in a blanket, threw her over his shoulder, put her in his car, and drove away.

　　**{¶4}**　Because of the turbulent nature of K.L.'s relationship with Appellant, she made a pact with her sister, B.L., to check in via text messaging or calling every hour, on the hour. When K.L. failed to check in with B.L. on June 17, 2020, and did not answer her phone, K.L.'s sister called M.D. After M.D. told B.L. what happened with Appellant, B.L. called the police.

{¶5} Canton City Police Officer Joseph Barnhouse was assigned to investigate, alongside Detective Daniel Szaniszlo. Police pinged both K.L's and Appellant's cell phones in an effort to locate K.L. K.L.'s phone was turned off. When police drove to Appellant's apartment, they noted a black Chevrolet Camaro convertible parked outside. While the officers were looking at the vehicle, a woman came up to them. The woman told officers the person who drives the Camaro lives in the apartment above her, and was always fighting with his girlfriend. She told police she heard arguing from the apartment earlier, but had not heard anything recently.

{¶6} Police knocked on the door of Appellant's apartment, announcing they were police and calling Appellant's name. They received no response. Officers breached the door with a battering ram, and apprehended Appellant. After they affirmed to K.L it was safe to come out, K.L. emerged from the bedroom. She was unharmed except for a red mark on her neck, but appeared very distraught, upset, and disheveled. Upon questioning, K.L.'s statement lined up with the account of the events given to police by M.D. Police learned from K.L. Appellant put a pillow over her face to keep her from calling out when police knocked on the door. Police found K.L.'s cell phone on Appellant's person.

{¶7} Appellant was indicted by the Stark County Grand Jury on one count of kidnapping and one count of menacing by stalking. Prior to trial, Appellant was represented by three different attorneys, all of whom withdrew, and all of whom Appellant filed grievances against. At a hearing on October 27, 2020, at which his third counsel requested permission to withdraw, Appellant informed the court he wanted to represent

himself. After a lengthy colloquy on the record, Appellant executed a waiver of counsel. The trial court appointed standby counsel.

**{¶8}** The case proceeded to trial on November 4, 2020. Appellant conducted voir dire and gave an opening statement pro se. While Appellant was cross-examining the State's first witness, the trial court called a break. Outside the presence of the jury, Appellant asked for standby counsel to "step in." Tr. II, 111. Standby counsel first moved to withdraw, which the trial court denied. Standby counsel then moved for a continuance.[1] The motion was denied. The trial court recessed for about ninety minutes to allow Appellant and standby counsel time to confer. After the recess, Appellant informed the trial court he wished to continue representing himself.

**{¶9}** The jury found Appellant guilty of both charges, and Appellant was convicted as charged. The trial court sentenced Appellant to eight to twelve years incarceration for kidnapping and eighteen months incarceration for menacing by stalking, to be served concurrently. It is from the November 16, 2020 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, WHEN STANDBY COUNSEL MOVED TO WITHDRAW AS UNPREPARED.

---

[1] Although the speaker moving for a continuance is identified in the transcript as Appellant, it is apparent from the speaker's reference to Appellant in the third person, the speaker was in fact standby counsel.

II. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT.

III. THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

IV. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT A CONTINUANCE WHEN STANDBY COUNSEL MOVED TO WITHDRAW DURING TRIAL.

I.

{¶10} In his first assignment of error, Appellant argues standby counsel was ineffective because she was not prepared to proceed as lead counsel during trial.

{¶11} The following colloquy occurred during a recess, called by the court during Appellant's cross-examination of the State's first witness:

THE COURT: Mr. Dinger, is there something you wish to bring to the attention of the Court?

MR. DINGER: Yes. I would like Angel Ruhl to step in.

THE COURT: Okay. Ms. Ruhl?

MS. RUHL: Your Honor, at this time, I would have to ask the Court for permission to withdraw. I was just appointed on this case about a week ago, and I've had limited opportunity to converse with my client then regarding these matters. And so, that would be my first motion to the Court.

THE COURT: And that would be overruled.

**{¶12}** Tr. II, 11-112.

**{¶13}** After standby counsel's motion to continue the case was overruled, the trial court gave Appellant and standby counsel an opportunity to discuss the case and how to proceed, after which Appellant expressed his desire to continue representing himself.

**{¶14}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶15}** "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus. Standby counsel serves as an important resource for pro se defendants by assisting them to navigate "the basic rules of courtroom protocol" and to "overcome routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). While hybrid representation is prohibited, standby counsel is appointed to attend the trial and answer the defendant's questions regarding courtroom procedure. *State v. Owens*, 3d Dist. Allen No. 1–07–66, 2008-Ohio-4161, 2008 WL 3822608, ¶ 26.

**{¶16}** In a case where a similar claim of ineffective assistance of standby counsel for lack of preparation was raised, the Tenth District Court of Appeals held a defendant cannot raise a claim of ineffective assistance of standby counsel on appeal:

Appellant additionally contends that his standby counsel was ineffective because he was not familiar with appellant's case. Here, appellant elected to exercise his right of self-representation. In Ohio, "a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel," but "these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. Thus, appellant cannot complain that he failed to receive effective assistance of counsel because "he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407 (1987). Further, appellant points to nothing in the record to suggest that his standby counsel rendered ineffective assistance, or that he was prejudiced by such deficient assistance. Therefore, we find appellant's arguments regarding the effectiveness of his standby counsel to be without merit.

**{¶17}** *State v. Hillman*, 10th Dist. No. 14AP-252, 2014-Ohio-5760, 26 N.E.3d 1236, ¶ 58.

**{¶18}** Appellant argues in the instant case, at the point in the trial when he asked Ms. Ruhl to step in, she was appointed as counsel, and no longer standby counsel. We disagree. It is not clear from the record what Appellant desired Ms. Ruhl to do at this point: take over as his counsel, or step in on the cross-examination of the witness, which would be prohibited hybrid representation. While the trial court acknowledged Appellant's apparent decision to proceed with counsel taking over, the trial court did not appoint Ms. Ruhl as lead counsel on the record. Further, the record does not reflect Appellant revoked his right to self-representation, which he had validly waived before trial. After a recess to converse with Ms. Ruhl, Appellant indicated he desired to continue to proceed pro se, and Ms. Ruhl at no point acted in the role of lead counsel for Appellant in the conduct of the trial. We therefore find Appellant cannot raise a claim of ineffective assistance of counsel because there is no right to hybrid counsel and Appellant cannot assert his own ineffectiveness as counsel. *Hillman, supra.*

**{¶19}** The first assignment of error is overruled.

II., III.

**{¶20}** In his second and third assignments of error, Appellant argues the judgments of conviction are not supported by sufficient evidence, and are against the manifest weight of the evidence.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.'"　*State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶22}**　An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶23}**　Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(3):

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

> (3) To terrorize, or to inflict serious physical harm on the victim or another[.]

**{¶24}**　The State presented evidence through the testimony of the police officers investigating the case Appellant went to the home of M.D., pushed his way past M.D. into the home, wrapped K.L. in a blanket, threw K.L. over his shoulder, put her in his car, and drove her to his apartment.　When police knocked and announced their presence, Appellant did not answer the door.　After police breached the door with a battering ram and apprehended Appellant, K.L. came out of the bedroom.　K.L. appeared disheveled, distraught, and upset.　She later indicated to police she could not call out to police when

they knocked on the door because Appellant held her down, with a pillow over her face. Police located K.L.'s cell phone on Appellant's person. We find this is sufficient evidence if believed by the jury to convict Appellant of kidnapping, and we further find the verdict is not against the manifest weight of the evidence.

{¶25} Appellant was also convicted of menacing by stalking in violation of R.C. 2903.211(A)(1):

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶26} The State presented testimony from the investigating officers Appellant had been following K.L and her friend M.D. Appellant admitted on cross-examination he went to K.L.'s apartment uninvited at 4:00 a.m. in the morning. A neighbor of K.L told police

she observed an incident where Appellant pounded on K.L.'s door while K.L. screamed at him to leave her alone or she would call the police. Because of problems with Appellant, K.L. and her sister B.L. had a pact where K.L would stay in contact with B.L. by texting or calling every hour on the hour. We find this is sufficient evidence to support the conviction of menacing by stalking, and we find the judgment is not against the manifest weight of the evidence.

**{¶27}** The second and third assignments of error are overruled.

IV.

**{¶28}** In his fourth assignment of error, Appellant argues the trial court erred in overruling his motion to continue the case after he stated he would like standby counsel to step in.

**{¶29}** We review a trial court's decision to deny a request for a continuance for abuse of discretion. *Hamad v. Hamad*, 10th Dist. No. 12AP–617, 2013-Ohio-2212, 2013 WL 2394974, ¶ 13, *citing Young v. Young,* 10th Dist. No. 11AP–1148, 2012-Ohio-4377, 2012 WL 4364428, ¶ 6. "[A]buse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶30}** When examining a trial court's denial of a motion for a continuance, a reviewing court "must weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the efficient dispatch of justice." *State v. Woods*, 10th Dist. Franklin No. 09AP–667, 2010-Ohio-1586, 2010 WL 1408317, ¶ 24, *citing State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Factors to

consider when reviewing a motion for a continuance include, but are not limited to, the following: "the length of delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.' " *Woods* at ¶ 24, *quoting Unger* at 67–68, 423 N.E.2d 1078.

**{¶31}** In the instant case, we note the motion to continue, although attributed to Appellant in the transcript, appears from the context to have been made by standby counsel, and was based on the difficulty she would encounter by taking over the case after Appellant had completed a portion of the trial acting pro se.   Because Appellant never revoked his right to self-representation, we find the motion to continue made by standby counsel is a nullity.

**{¶32}** But even if the motion is validly attributed to Appellant, we find the trial court did not abuse its discretion in denying the motion to continue.  The motion to continue was made during cross-examination of the first witness:  after jury selection, opening statements, and a substantial portion of the questioning of the first of the two State's witnesses was complete.  Appellant previously had fired and filed grievances against three attorneys before exercising his right to self-representation.  Under the scenario presented herein, we find Appellant contributed to the circumstances which gave rise to the request for a continuance. Further, the trial was conducted during the Covid-19 pandemic, and throughout the record it is apparent numerous measures were in place to

ensure the safety of all involved in the trial.  Based on the factors set forth in *Unger, supra*, we find no abuse of discretion in denying the motion to continue.

**{¶33}**  The fourth assignment of error is overruled.

**{¶34}**  The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur